145 N.J. Super. 268 (1976)
367 A.2d 887
STATE OF NEW JERSEY IN THE INTEREST OF B.T., W.W. AND E.S., JUVENILES-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1976.
Decided November 16, 1976.
*271 Before Judges CARTON, KOLE and LARNER.
Mr. Richard M. Glassner, substituted attorney, argued the cause for appellant B.T. (Messrs. Stein, Bliablias and McGuire, attorneys; Mr. Kenneth J. McGuire on the brief).
Mr. Stanford M. Singer, Assistant Deputy Public Defender, argued the cause for appellant W.W. (Mr. Stanley C. Van Ness, Public Defender, attorney).
Messrs. Rapkin, Chessin & Carrion, attorneys for appellant E.S., submitted on briefs of other appellants.
*272 Ms. Zulima V. Farber, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph C. Woodcock, Jr., Bergen County Prosecutor, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal presents for review the determination of the Bergen County Juvenile and Domestic Relations Court that three juveniles over the age of 16 charged with homicide should be tried as adults pursuant to the provisions of N.J.S.A. 2A:4-48 and R. 5:9-5(b). The juveniles assert several grounds in support of their contention that the waiver of jurisdiction and transfer for adult prosecution constituted reversible error.
The first contention asserted by appellants is that the nature of the transfer hearing deprived them of due process of law in two respects: (1) admission in evidence of statements of W.W. and D.C.[1] obtained by police without Miranda warnings, and (2) infringement of their right of confrontation because of their inability to cross-examine the declarants whose statements inculpated the other juveniles.
The statement of W.W.[2] may or may not be excluded as to him at a plenary trial wherein his guilt would be at issue, depending upon the court's finding as to voluntariness, sufficiency of the Miranda warnings and the effectiveness of waiver of counsel. See Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); State v. Graham, 59 N.J. 366 (1971). Similarly, the admissibility of the statements of W. and C. against the other defendants at a joint trial might be legally suspect on the basis of the right of confrontation under the Sixth and Fourteenth Amendments and the problems explored in Burton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and State v. Young, 46 N.J. 152 (1965).
*273 However, these constitutional guarantees arising from the question of admissibility of evidence at a trial on the merits do not apply to a preliminary jurisdictional hearing which simply determines whether the accused is to be tried in one court or another. Such a hearing is a preliminary proceeding to determine the propriety of transfer under the statutory criteria. The portion of the hearing relating to probable cause can be analogized to the probable cause hearing prior to indictment or the determination of a grand jury to indict. In either of these instances, rules of evidence and constitutional guarantees involving the trial process are inappropriate. Since the result of a preliminary judicial proceeding as involved herein does not adjudicate the guilt of the accused, the type of permissible evidential material used by the court in reaching its conclusion is not circumscribed by the limited evidential rules applied at trial. See State v. Ferrante, 111 N.J. Super. 299 (App. Div. 1970); State v. Price, 108 N.J. Super. 272 (Law Div. 1970). See also Fed. R. Crim. P. 5.1(a); James v. State, 254 So. 2d 838, 839 (Fla. Dist. Ct. App. 1971), cert. den., 409 U.S. 985, 93 S.Ct. 334, 34 L.Ed.2d 249 (1972).
The demands of due process at such a preliminary stage of the proceedings are no more extensive than to afford the accused a fair hearing where he is represented by counsel and has an opportunity to be heard and present evidence. See Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Such rights are guaranteed in this State with respect to a transfer hearing. State v. Van Buren, 29 N.J. 548 (1959); R. 5:9-5(b); R. 5:3-3(a). Otherwise, the full panoply of rules and rights guaranteed to defendants at trial by virtue of the several constitutional amendments urged by defendants have no relevancy or application. Thus, we find no basis for the assertion that defendants were deprived of due process of law.
With the disposition of the foregoing constitutional issues we next consider the trial judge's finding that the statutory criteria were satisfied so as to warrant the order of *274 transfer. The pertinent portion of the applicable statute provides:
The juvenile and domestic relations court may, without the consent of the juvenile, waive jurisdiction over a case and refer that case to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing that:
a. The juvenile was 16 years of age or older at the time of the charged delinquent act;
b. There is probable cause to believe that the juvenile committed a delinquent act which would constitute homicide, treason if committed by an adult or committed an offense against the person in an aggressive, violent and willful manner * * *
c. The court is satisfied that adequate protection of the public requires waiver and is satisfied there are no reasonable prospects for rehabilitation of the juvenile prior to his attaining the age of majority by use of the procedures, services and facilities available to the court. [N.J.S.A. 2A:4-48]
The Legislature has vested the Juvenile Court with the discretionary power to direct a transfer, and as a consequence, that court's judgment can only be overturned upon an appellate finding that the decision was arbitrary as a mistaken exercise of discretion. See State v. Tuddles, 38 N.J. 565, 572 (1962); State v. Van Buren, supra, 29 N.J. 548 at 559.
The record reveals that as of the time of the hearing in January 1976, B.T.[3] was approximately 17 1/2 years old, W. approximately the same age and E.S.[4] a few months younger.
On December 15, 1975 Robert Cooper, an employee of the Garfield Target Range in Garfield, New Jersey, was found dead, lying in a pool of blood at the range with six bullets in his body. The bullets used were described as the type used for target practice at pistol ranges. Two glass display cabinets had been broken into and 23 weapons were missing.
As a result of police investigation S. and W. were interrogated and they led the police to several locations where *275 12 handguns, one rifle and ammunition were recovered. Some were in a green bag hidden in a lot behind W.'s place of abode; another was found in the basement of the same building pursuant to an anonymous tip, and one was hidden under W.'s bed. Other guns were found in S.'s attic. All were identified as property stolen from the range. A search of the home where T. resided with his parents produced an additional handgun belonging to the range and two other unconnected handguns. In all, only 14 of the 23 missing weapons were recovered.
W. related in his statement that he had gone to the target range with T. earlier on the fatal day of December 15. They were denied access because they did not have appropriate identification. They then asked S. to drive them to the range in his father's car. On the way, one of them said that "they were going to get guns." When they arrived at the range S. gave a false driver's license, issued to a cousin who was then living in Puerto Rico, to W. and T. who entered the range while S. and C. remained in the car. T. and W. were able to rent, through the use of the false license, a .38-caliber revolver with a green handle and proceeded to shoot a few rounds at the target. During this time the range employee, Cooper, commenced shooting in the next stall.
Suddenly T. took a step back, shot Cooper in the head and took three or four more shots at the victim (latter fact is supported by circumstantial evidence). Thereafter W. and T. returned and T. threw a green duffel bag into the car trunk. C. testified that T. pointed a gun at him in the car and said, "nobody knows anything, everybody keep their mouth shut." On the return trip T. threw the gun with a green handle into the river, stating that he did so because that gun was marked.
On the basis of the foregoing operative facts, the trial judge found that there was probable cause to believe that the three juveniles committed a delinquent act which would constitute homicide if committed by an adult. Implicit in this finding was the determination on a probable cause basis *276 that T. committed the actual killing and that W. and S. aided and abetted in the killing and the robbery or larceny which motivated the same.
We conclude that there was a substantial evidential basis for the finding of probable cause and therefore affirm the court's determination on that statutory criterion.
W. and S. assert that their role in the crime as developed by the evidence is not one which authorizes waiver of jurisdiction for adult prosecution. They argue that the statute does not encompass the charge of homicide through the route of aiding and abetting or committing a felony, and that the absence of evidence that they personally perpetrated the killing removes them from the ambit of the statute.
This argument is clearly without merit. The statute permits a transfer when there is probable cause that the juvenile committed a homicide, regardless of the degree of the homicide or the participation of the accused. Whether the homicide is one defined as manslaughter under N.J.S.A. 2A:113-5, murder in the first or second degree under N.J.S.A. 2A:113-2, or murder in the perpetration of a felony under the same statute, the result is the same. A homicide has been committed  an offense which is squarely within the language of the statute. By the same token, a juvenile who aids or abets another in the commission of a homicide is equally guilty as a principal (N.J.S.A. 2A:85-14) and therefore as amenable to the transfer process as his cohort who has pulled the trigger.
The third element of the statute requires a finding by the court that it is satisfied that "adequate protection of the public requires waiver." The trial judge concluded, mainly from the facts underlying the offense involved, that this criterion was met. With respect to T. and S. there was no evidence of prior juvenile offenses. W. has a prior juvenile record; he had been found guilty in September 1972 of juvenile delinquency arising out of three breaking and entry charges and placed on probation until July 1973.
*277 The judge emphasized that the killing was in cold blood motivated by the desire to acquire an arsenal of guns and ammunition pursuant to a prearranged plan of action. Of the 23 guns stolen, nine are still unaccounted for. These facts alone reasonably justify a conclusion that defendants were bent not only on the commission of a crime at the target range but on a series of criminal adventures which necessitated the availability of guns. Each one participated in some degree in the preparation for the crime and the cover-up actions subsequent thereto. Under the foregoing circumstances, a finding that adequate protection of the public requires waiver was fully warranted.
The judge also found that there are no reasonable prospects for rehabilitation of the juveniles prior to attaining the age of majority. He reasoned that the facilities of the reformatory system available to the Juvenile Court are inadequate to treat with these individuals, and if they are convicted, that the trial court should have sentencing options which include incarceration for a determinate period in the prison system. His oral opinion reflects that he based his conclusion on the assumption that 18 years is the age of majority referred to in the statute.
Defendants attack the finding as to the rehabilitation criterion on the ground that the Legislature intended that the term "majority" in this statute refers to age 21 and not 18. See State in Interest of G.T., 143 N.J. Super. 73 (App. Div. 1976), certif. granted, 71 N.J. 532 (1976), decided subsequent to the trial judge's ruling herein. Since this Appellate Division opinion is controlling law unless reversed by the Supreme Court, the judge erred in evaluating the prospects of rehabilitation on a majority standard of 18 years of age.
Despite this error, we deem it appropriate to exercise our original jurisdiction under R. 2:10-5 to resolve the merits of the appeal. See State in Interest of G.T., supra; State in Interest of J.F., 141 N.J. Super. 328 (App. Div. 1976). We select this course rather than a remand because all the *278 facts developed at the hearing are before us and the sole remaining issue relates to the proper legal conclusion determinative from those facts  namely, whether or not there is a reasonable prospect of rehabilitation, assuming that the age of majority is 21.
In our opinion, the juxtaposition of age 21 as the potential period of rehabilitation in place of 18 makes no significant impact on the result under the circumstances of this case. The cruel nature of the crime herein and the involvement of the three juveniles in the heinous plan points to the strong probability that rehabilitation within the framework of the lenient processes and facilities of juvenile-oriented institutions will be fruitless. Experience has demonstrated the ineffectiveness of the rehabilitative process with juveniles who are involved in violent crimes. And society has sadly observed that more and more crimes of violence are being committed by those designated as juveniles under our law who have the instincts and abilities to commit the same serious and violent crimes as their elders.
As a consequence, the court, in an appropriate case, may consider that deterrence and punishment may be more salutary than the slight possibility of successful rehabilitation both from the viewpoint of the juvenile and his future potential victims. Chief Justice Weintraub observed in State v. Van Buren, supra, in discussing the transfer statute which preceded the one controlling this case:
Thus a case may be referred to the prosecutor when the circumstances indicate that, if the charge is ultimately established, society would be better served by the criminal process by reason of the greater security which may be achieved or the deterring effect which that process is thought to accomplish. [29 N.J. at 557]
As we noted in State in Interest of J.F., supra:
Notwithstanding the charges that have been wrought with respect to the criteria governing the judge's determination whether to transfer to the prosecutor or not, the foregoing thesis is as viable today as it was when pronounced. [141 N.J. Super. at 332]
*279 We find that the record below adequately supports the court's findings on all the statutory criteria authorizing the waiver of the jurisdiction of the Juvenile Court. The appellants have failed to demonstrate that the judge abused the discretion entrusted to him by the Legislature.
We have also considered the other peripheral arguments advanced by appellants and find them to be wholly without merit. R. 2:11-3(e) (2).
Affirmed.
NOTES
[1] D.C. (hereinafter referred to as C.) is another alleged participant not involved in this proceeding because he was under the age of 16.
[2] Hereinafter referred to as W.
[3] Hereinafter referred to as T.
[4] Hereinafter referred to as S.