STATE OF NEW JERSEY IN THE INTEREST OF C. A. H. AND
B. A. R., JUVENILES-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 24, 1981—Decided March 11, 1981.

Before Judges MICHELS, KOLE and ARD.

*William F. Lamb*, Assistant Prosecutor, Middlesex County, argued the cause for appellant State of New Jersey (*Richard S. Rebeck*, Middlesex County Prosecutor, attorney).

*Ronald W. Reba* argued the cause for respondent C.A.H.

*Alice Milmed Haller*, Assistant Deputy Public Defender, argued the cause for respondent B.A.R. (*Stanley C. Van Ness*, Public Defender, attorney).

The opinion of the court was delivered by

KOLE, J.A.D.

This appeal, on leave granted, is by the State from an order of the Juvenile and Domestic Relations Court (Juvenile Court) refusing to waive its jurisdiction and refer the juvenile delinquent complaints against C.A.H. and B.A.R. to the adult court under *N.J.S.A.* 2A:4–48. See also, *R.* 5:9–5(b). The Juvenile Court judge's determination was made after an extensive hearing.

The juvenile complaints charged C.A.H. and B.A.R. with offenses which, if committed by an adult, would constitute armed

robbery, felony murder, automobile theft and receiving stolen property, aiding and abetting another armed robbery and malicious destruction of an automobile. Essentially similar charges were contained in an indictment against an adult, Edward Margie.

The facts as to the offenses are substantially to the following effect.

On the night of May 3, 1979 B.A.R., C.A.H. and Edward Margie set out to rob some stores in Middlesex County. B.A.R. and C.A.H. stole a car from a dealer's lot in the Borough of Sayerville. They picked up Margie and went to Krauszer's Food Store in Edison. Margie went into the store and committed robbery therein. He used a gun which had been brought by C.A.H. They then drove to another Krauszer's in Fords. This time B.A.R. went in to commit the robbery. He pulled the gun on the clerk, who was standing behind the counter, and demanded money from the cash register. The clerk refused and, according to B.A.R., reached toward his pocket. B.A.R. fired and hit the clerk in the eye, killing him. B.A.R. opened the register and took the money. While he was behind the counter and the deceased was lying behind him "with his eye hanging out," a customer walked in and asked for cold cuts. B.A.R. stated that "we weren't cutting no cold cuts this time of night. . . ." The customer left.[1]

B.A.R. then took the money and ran back to the car, and C.A.H. drove off. They eventually pulled off the road and set fire to the car. C.A.H. took possession of the gun. C.A.H. and B.A.R. were arrested about two months later after being stopped while driving to Florida. They had the gun with them at that time.

When the offenses were committed B.A.R. was 17 years and 6 months old and C.A.H. was 16 years and 10 months. Margie

---

[1] The incident behind the counter is taken from B.A.R.'s statement to the police which the judge admitted at the hearing.

was 18 years and some 2 months at the time. The judge found that the juveniles were of sufficient age for referral to the adult court under *N.J.S.A.* 2A:4–48(a) and that there was probable cause to believe that they committed the offenses, including murder. See *N.J.S.A.* 2A:4–48(b). The primary issues at the hearing, therefore, were whether "adequate protection of the public" required waiver and whether there were any reasonable prospects for rehabilitation of the juveniles prior to their attaining the age of 21. *N.J.S.A.* 2A:4–48(c); *State in the Interest of G.T.*, 143 *N.J.Super.* 73, 79 (App.Div.1976), aff'd o. b. 75 *N.J.* 378 (1978) (hereafter *G.T.*).

The hearing involved the evidence, among others, of various experts.

In holding that the matter should not be referred to the adult court the judge's determination was in conclusory terms, notwithstanding the substantial amount of evidence adduced at the hearing, much of it conflicting in nature. The judge simply stated:

> In light of the testimony of those experts, especially regarding the existence and function of the Juvenile Homicide Unit at Yardville, I am satisfied that some reasonable prospect of rehabilitation exists for these young men prior to their attaining the age of twenty-one. I am also satisfied that adequate protection of the public does not require waiver, since an indeterminate to life sentence will contain both or either of them so long as 'rehabilitation' requires.

It is true that, under *R.* 1:7–4, in juvenile actions the court is required to make a general finding and in addition on request find the facts specially.[2] The foregoing findings by the Juvenile Court judge are plainly general. But they are totally inadequate in a case as serious as that before us, involving offenses such as homicide, to serve as a basis for a proper review of the judge's determination and order. They do not provide sufficient data, discussion of the evidence or reasons for us to

---

[2]In view of the seriousness of the offenses, the complexity of the issues and record in this case and the specific criteria of *N.J.S.A.* 2A:4–48, the State should have moved for such special findings of fact, particularly since it moved for leave to appeal from the ultimate determination.

make an informed determination as to whether the action below was or was not soundly grounded in the proofs or constituted an appropriate, rather than an arbitrary, exercise of discretion. *See State in the Interest of B.T.,* 145 *N.J.Super.* 268, 274, 279 (App.Div.1976), certif. den. 73 *N.J.* 49 (1977) (hereafter *B.T.*); *G.T., supra; State in the Interest of J.F.,* 141 *N.J.Super.* 328 (App.Div.1976) certif. den. 71 *N.J.* 347 (1976) (hereafter *J.F.*).

From the standpoint of the interests of the juvenile and the public, the findings of fact and reasons required for proper appellate review of the determination of the judge are no less significant with respect to a grant or denial of the juvenile court's waiver of jurisdiction than with respect to an adjudication of delinquency on the merits. *See State in the Interest of J.M.,* 57 *N.J.* 442, 445 (1971); *R.* 3:29, applicable to criminal proceedings, but which we consider to be apposite here, requiring the court to place on record the reasons supporting its decision on any disposition of a criminal matter. *Cf. State in the Interest of S.Z.,* 177 *N.J.Super.* 32 (App.Div. January 5, 1981). *See, also, Curtis v. Finneran,* 83 *N.J.* 563, 569–570 (1980); *State in the Interest of B.C.L.,* 82 *N.J.* 362, 380–382 (1980) (hereafter *B.C.L.*); *State v. Singletary,* 165 *N.J.Super.* 421, 424–425 (App.Div.1979), certif. den. 81 *N.J.* 50 (1979); *In re Union Community Bank Application,* 144 *N.J.Super.* 39, 46–47 (App.Div.1976).

We observe that it is impossible to discern from the general findings here whether the judge used the appropriate standard in determining whether to waive jurisdiction under the statute, as interpreted by the courts. That standard requires that significant weight be given to the safety and welfare of the public and the nature of the offense. As Justice Pashman stated in *B.C.L., supra,*

... rehabilitation is not the sole criterion in deciding whether to prosecute a juvenile as an adult defendant. Courts should also consider the welfare of society—the security created by deterring future crimes.... The seriousness of the offense is therefore relevant when the Juvenile Court determines whether it should waive jurisdiction.... Indeed, even when a juvenile has no prior record, the seriousness of the offense alone can suffice to justify waiver. *State in the*

*Interest of B.T.,* 145 *N.J.Super.* 268, 277 (App.Div.1976), certif. den. 73 *N.J.* 49 (1977). [82 N.J. at 377–378; footnote omitted.]

That waiver standard also requires that there be a realistic possibility of successful rehabilitation by age 21 by the use of the facilities and services available to the juvenile court. *See B.T., supra* 145 *N.J.Super.* at 278; *J.F., supra; G.T., supra.*

The general findings are also unclear. Although stating that "some reasonable prospect of rehabilitation exists" prior to both juveniles' attaining the age of 21, it then seems to indicate that rehabilitation beyond that age while the juveniles are incarcerated for "an indeterminate to life sentence" would adequately protect the public. Since a disposition in a juvenile case for a homicide "shall be indeterminate and shall continue until the appropriate paroling authority determines that such person should be paroled," *N.J.S.A.* 2A:4–61(h), it must be clear that the juvenile court judge did not consider the availability of incarceration beyond age 21 as in any wise supporting a conclusion that rehabilitation may occur before age 21. Additionally, absent real prospects for rehabilitation by that age by the use of juvenile facilities, there is no justification for assuming that the public protection provision of the statute would be satisfied merely because the disposition for homicide would contain the juveniles until rehabilitated—even beyond age 21.

It is also necessary that the waiver determination and findings be made with respect to each juvenile separately.

We are thus constrained to remand the matter to the Juvenile Court judge for clarification of her ruling and for detailed findings of fact and conclusions of law supporting her ultimate determination on the question of jurisdiction with respect to both juveniles. Such findings should be in sufficient detail, with respect to each juvenile separately, so as to correlate them to the legal conclusion reached in the light of the criteria for waiver which we have set forth.

The findings of fact and conclusions of law shall be filed with the clerk of this court no later than 30 days from the date of this

opinion, with copies thereof to each of the parties. The parties shall file simultaneous briefs with such clerk within 15 days after receipt of such findings and conclusions. If any party desires further argument, a request therefore shall be made in writing to the clerk at the time of the filing of that party's brief.

Remanded for proceedings consistent with this opinion. We retain jurisdiction.