432 S.E.2d 793

**STATE of West Virginia, Plaintiff Below, Appellee,**

**v.**

**GARY F., Infant; Debbie F., Mother, Defendants Below,**

**Gary F., Defendant Below, Appellant.**

**No. 21412.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided June 28, 1993.

Larry Bonham, Asst. Atty. Gen., Charleston, for appellee.

. Carolyn Sue Daniel, Shepherdstown, for appellant.

WORKMAN, Chief Justice:

Appellant Gary F. appeals from an order of the Circuit Court of Jefferson County entered on June 1, 1992, transferring him from the court's juvenile jurisdiction to criminal jurisdiction pursuant to West Virginia Code § 49–5–10(d)(4) (1992)[1] in connection with charges of aggravated robbery. Because we conclude that Appellant's due process rights were violated by allowing a critical witness to testify by telephone as part of the transfer hearing, we reverse the decision of the lower court and remand this matter for further proceedings.

On January 2, 1992, Appellant, then sixteen years old, was arrested and charged with committing the crimes of aggravated robbery, burglary, larceny, and battery in Jefferson County, West Virginia. Following the filing of the State's motion on January 16, 1992, a hearing was held on January 27, 1992, to determine whether Appellant's case should be transferred to the court's criminal jurisdiction. The transfer hearing was continued to permit the psychological evaluation requested by Appellant. Upon the completion of the psychological report, the circuit court heard evidence with regard to the issue of transfer on March 24 and 25, 1992. The circuit court transferred Appellant to the court's criminal jurisdiction by order entered on June 1, 1992, after finding probable cause to believe that Appellant had committed aggravated robbery. *See* W.Va.Code § 49–5–10(d)(4), *supra* note 1. Seeking a reversal of the transfer order, Appellant, who is currently incarcerated at the Eastern Regional Juvenile Detention Center, initiated this appeal pursuant to West Virginia Code § 49–5–10(f).[2]

Appellant seeks to reverse the transfer order on four grounds: (1) the State's failure to disclose a witness; (2) the telephonic testimony of a State witness; (3) the holding of the transfer hearing after the statutorily-prescribed seven-day period; and (4) the trial court's failure to make specific findings regarding Appellant's maturity,

1. West Virginia Code § 49–5–10(d)(4) permits the court to "transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that: A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult[.]"

2. A juvenile has a direct right of appeal to this Court to challenge a transfer order under West Virginia Code § 49–5–10(f).

emotional attitude, and home environment. Addressing these assignments of error in order, we first examine the alleged error regarding the State's non-disclosure of a witness.

Appellant complains that the State ignored its duty to supplement its initial witness list pursuant to Rule 16(c) of the West Virginia Rules of Criminal Procedure.[3] In responding to the various discovery requests of Appellant, the State provided a list of witnesses and corresponding statements from those witnesses to Appellant on January 24, 1992. The State subsequently obtained a statement from co-defendant Joseph Riggs (hereinafter sometimes referred to as "Joey" or "Mr. Riggs") on January 28, 1992, but did not supplement its prior discovery responses to identify Mr. Riggs as a witness or to produce his statement. The State does not dispute that it failed to supplement its witness list to include the name of Joseph Riggs. The State does dispute, however, that it failed to timely provide Appellant with a copy of Mr. Riggs' statement based on its tender of the statement to Appellant at the beginning of the transfer hearing on March 24, 1992.

■ The State's response to Appellant's contentions is two-fold: (1) The Rules of Criminal Procedure are inapplicable; and (2) Mr. Riggs' testimony had no prejudicial effect on Appellant's case. As to the applicability of the West Virginia Rules of Criminal Procedure to juvenile proceedings, Rule 54 of those rules states that: "Except as expressly provided within these rules, they do not apply to proceedings under West Virginia Code, Chapter 49, Article 5, Section 1, et seq.—juvenile delinquency—so far as they are inconsistent with that statute." W.Va.R.Crim.P. 54(b)(3). The State reasons that such an inconsistency is presented by the language of Rule 16(a)(1)(E) of the West Virginia Rules of Criminal Procedure which requires that "the state

shall furnish to the defendant a written list of names and addresses of all state witnesses whom the attorney for the state intends *to call in the presentation of the case in chief....*" W.Va.R.Crim.P. 16(a)(1)(E) (emphasis supplied). According to the State, the "case in chief" language contained in Rule 16(a)(1)(E) necessarily limits the rule's applicability to an actual criminal trial as contrasted to a juvenile transfer hearing. Finding no logical reason to so limit the application of Rule 16(a)(1)(E) of the West Virginia Rules of Criminal Procedure, we reject the State's argument that Rule 16(a)(1)(E) presents the type of inconsistency referenced by Rule 54(b)(3). *See* W.Va.R.Crim.P. 54(b)(3). Accordingly, we find that the continuing disclosure requirement imposed by Rule 16 of the West Virginia Rules of Criminal Procedure applies to juvenile transfer proceedings in the same manner as it applies to criminal proceedings. *See* W.Va.R.Crim.P. 16(c), *supra* note 3.

■ The State argues that its late disclosure of Mr. Riggs as a witness does not amount to reversible error because it had no prejudicial effect on Appellant's case. This Court first announced the standard for determining when non-compliance with a discovery request constitutes reversible error in syllabus point two of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980):

When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

**3.** Rule 16(c) of the West Virginia Rules of Criminal Procedure provides that:

*Continuing Duty to Disclose.* If, prior to or during trial, a party discovers additional evidence or material previously requested or or-

dered, which is subject to discovery or inspection under this rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material.

*Id.* at 547, 270 S.E.2d at 174.[4] We elaborated on this standard in *State v. Miller,* 178 W.Va. 618, 363 S.E.2d 504 (1987), by explaining that "[t]he threshold inquiry is to 'take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance [or recess if the trial has begun], and any other relevant circumstances.'" *Id.* at 625, 363 S.E.2d at 511 (quoting 2 Charles A. Wright, *Federal Practice and Procedure* § 260 (1982) and footnote omitted). In *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988), this Court modified syllabus point two of *Grimm,* by combining it with syllabus point 4 of Miller:

> Our traditional appellate standard for determining whether the failure to comply with court[-]ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), and is applicable to discovery under Rule 16 of the Rules of Criminal Procedure. It is summarized: The non-disclosure is prejudicial where the defense is surprised on the material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

179 W.Va. at 625, 371 S.E.2d at 346 and Syl. Pt. 1.

Pursuant to the "threshold inquiry" standard established in *Miller,* we first examine why the State failed to disclose Mr. Riggs as a potential witness. *See* 178 W.Va. at 625, 363 S.E.2d at 511. When questioned by the court at the transfer hearing regarding the non-disclosure, the State responded: "Your Honor, at the time we answered discovery, the statement was not available to our office. It had not been taken. And at that time we were unaware that Mr. Riggs would be a witness." Be-

cause the trial court did not pursue this area any further, we have no record on the issue of when the State decided to call Joey Riggs as a witness. Unless the State did decide literally at the last moment to call Joey Riggs, it had an ongoing obligation to supplement its prior witness list. Because the record was not more fully developed on this issue, any further analysis by this Court would be based on mere speculation.

Continuing the analysis suggested in *Miller,* we next examine the extent of prejudice to Appellant, the feasibility of rectifying that prejudice, and any other relevant circumstances. *Id.* Appellant argues that "allow[ing] [Mr. Riggs] to testify was highly prejudicial to ... [him] in that he was not able to adequately prepare to examine the witness and to meet his testimony." As to the damage caused by Mr. Riggs' testimony, Appellant states that Joey Riggs "was the only one to place the Defendant [Appellant] as a participant in the crime." The State conversely maintains that "there was testimony of other witnesses placing Appellant at the scene of the crime." Our review of the record reveals that while there may have been other witnesses who arguably placed Appellant at the scene of the crime, Joey Riggs was the only State witness to both place him at the scene of the crime and provide evidence that Appellant was in fact a participant in the robbery. Given that Joey Riggs was a co-defendant combined with the inculpatory nature of his statement, Mr. Riggs was clearly a critical witness for the State's case. Accordingly, we conclude that Mr. Riggs' testimony was necessarily prejudicial to Appellant's case as his testimony was the only proffered testimony that specifically connected Appellant to the alleged crimes.

In examining the feasibility of rectifying the prejudice caused by the non-disclosure of Joey Riggs, it is appropriate to consider

---

**4.** Although *Grimm* was written prior to the adoption of the West Virginia Rules of Criminal Procedure, the standard for determining whether failure to comply with court-ordered discovery is fatal remains the same as that which we announced in *Grimm. See* Syl. Pt. 4, *State v. Miller,* 178 W.Va. 618, 363 S.E.2d 504 (1987).

Subsequent to *Miller,* this Court modified the wording of the *Grimm* standard somewhat in syllabus point 1 of *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988). The modification, however, does not affect the substance of the standard; merely its form.

Appellant's failure to request a recess or continuance to prepare for cross examination of Mr. Riggs. As we noted in *Miller*, "[t]he failure to ask for a recess or a continuance to attempt to meet the late disclosed evidence or request sanctions, such as excluding or striking the evidence, are . . . factors courts have considered in determining whether the error would warrant granting a new trial." 178 W.Va. at 626, 363 S.E.2d at 512 n. 20. This Court considered the State's failure to disclose a witness in *Johnson* and remarked:

> [S]ome consideration must be given to the failure of defense counsel to timely object to the State's calling the witness or to request a recess or a continuance either before or after her testimony in order to prepare for cross-examination or to attempt to secure rebuttal evidence. Courts in other jurisdictions have concluded that a trial court ordinarily does not abuse its discretion in denying a motion for mistrial based upon a failure to disclose a witness's name, where there is no initial objection to the witness's testimony, no motion to preclude the testimony nor a request for a recess or continuance to prepare to meet the matters covered in the witness's testimony.

179 W.Va. at 626, 371 S.E.2d at 347.

Appellant did not object to the calling of Mr. Riggs as a witness at the point in the transfer hearing when his name was initially mentioned and the court first made inquiries regarding his whereabouts. He did object, however, immediately prior to the actual calling of Joey Riggs as a witness. The State stresses that five witnesses testified following the court's suggestion that Mr. Riggs be permitted to testify by telephone before Appellant voiced any objection to Mr. Riggs testifying. The Court finds more significance in the fact that at no point during the hearing did Appellant seek a recess or a continuance to prepare for cross-examination or rebuttal of Joey Riggs. This failure to act is important for two reasons. First, it demonstrates an

omission to attempt to remedy the alleged prejudice and second, it raises a question as to whether Appellant was in fact surprised by the statement of Joey Riggs. The logical tact employed in the instance of genuine surprise is to immediately request a recess or continuance. Because that was not done by Appellant, the implication is that no surprise had in fact occurred.[5]

The State argues additionally that Appellant should have known that Joey Riggs would testify since he was a co-defendant who was already incarcerated for his part in the crime. This Court has on at least two prior occasions considered the fact that defense counsel "was aware, or reasonably should have been aware" that a particular witness would be called on the State's behalf. *Johnson*, 179 W.Va. at 625, 371 S.E.2d at 346; *accord State v. Thompson*, 176 W.Va. 300, 305, 342 S.E.2d 268, 273 (1986). Given the absence of a developed record on this point, however, we can only suggest that Appellant's counsel probably should have considered the possibility of Mr. Riggs appearing as the State's witness.

When considering the issue of prejudice in connection with the relevant attendant circumstances, specifically Appellant's failure to request a recess or continuance, we conclude that the late disclosure of Mr. Riggs as a witness was not prejudicial to Appellant's case. Accordingly, we find no reversible error with regard to the State's failure to disclose Joey Riggs as a witness under the facts of this case.

Appellant argues that it was reversible error to permit Mr. Riggs to testify by telephone during the transfer hearing. The State responds to this argument by contending that Appellant failed to object to the telephonic nature of Mr. Riggs' testimony. The record is admittedly devoid of any objection by Appellant at the stage of the hearing when the court initially stated that it "would be satisfied to take his [Mr. Riggs'] testimony over the telephone if it can be arranged." Prior to the actual con-

---

**5.** Appellant states in his reply brief that he was surprised by the January 28, 1992, statement of Joey Riggs since it contrasted sharply with a statement made by Mr. Riggs at the time of his arrest. Apparently, the first statement of Joey Riggs denied any involvement on his or Appellant's part in the alleged crimes.

tacting of Mr. Riggs via telephone, the court heard and noted the exception of Mr. Riggs' counsel to the issue of taking Joey Riggs' testimony by telephone. Mr. Riggs' counsel stated as part of his objection, that due to the "below average intelligence level" of Joey Riggs, "my concern is knowing what can possibly happen in cross-examination, without Joey having the benefit of the statement in front of him, and without the benefit of myself being able to communicate with him in a confidential basis, I don't think I can do that on the telephone." The trial court then noted, "it appears that there is no Fifth Amendment issue" "considering ... the posture of his [Mr. Riggs'] case." Immediately thereafter, Appellant's counsel stated: "I would object to him being called also. I filed a motion for discovery, I believe the 24 of January, and I believe this statement was taken after that, but I wasn't given this statement until today. And he's not listed on the state's witness list."

■ Although Appellant did not object specifically to the telephonic nature of Mr. Riggs' testimony, the record discloses that he did object to permitting Joey Riggs to testify. Mr. Riggs' own counsel clearly objected to permitting the testimony to occur by telephone. Because objections were placed on the record regarding both the telephonic nature of the testimony and permitting Mr. Riggs to testify at all, this is not the case where waiver is automatically imposed for failure to preserve the objection. *Cf.* Syl. Pt. 3, *State v. Dudley,* 178 W.Va. 122, 358 S.E.2d 206 (1987). Mr. Riggs' counsel was certainly the proper party to raise the initial objection to the telephone testimony given his appropriate concerns regarding effective representation. Appellant's counsel should have joined in on the objection once made. However, because the Sixth Amendment right of an accused to confront his accusers [6] is a fundamental right,[7] there is a presumption against a waiver of this right. *See Sisk v. Commonwealth,* 3 Va.App. 459, 462, 350

S.E.2d 676, 678 (1986) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *Quintana v. Commonwealth,* 224 Va. 127, 144, 295 S.E.2d 643, 651 (1982), *cert. denied,* 460 U.S. 1029, 103 S.Ct. 1280, 75 L.Ed.2d 501 (1983). Accordingly, we do not find that Appellant waived his right to object to the telephonic nature of Mr. Riggs' testimony.

■ The State denies that the constitutional right to confront witnesses is afforded to a juvenile during a transfer hearing. This Court, in considering the issue of whether a juvenile is entitled to a jury trial at a transfer hearing, explained that

the transfer statute, W.Va.Code, 49–5–10 (1978), and W.Va.Code, 49–5–1 (1978), which contains general provisions regarding hearing rights, as well as *State v. McArdle,* 156 W.Va. 409, 194 S.E.2d 174 (1973), provide substantial due process rights that must be accorded a juvenile at a transfer hearing, including: (1) an advance written notice of the grounds relied upon for transfer; (2) an opportunity to be heard in person and to present witnesses and evidence; (3) *the right to confront and cross-examine adverse witnesses;* (4) a neutral hearing officer; (5) the right to have counsel present including court-appointed counsel if indigent; (6) a record of the evidence of the hearing; (7) findings of fact and conclusions of law upon which the transfer decision is based; and (8) a right of direct appeal to this Court.

*In re E.H.,* 166 W.Va. 615, 623–24, 276 S.E.2d 557, 563 (1981) (emphasis supplied). This Court clearly established in the *E.H.* case that the right to confront adverse witnesses is among those due process rights afforded at a juvenile transfer hearing. *Id.*

■ The United States Supreme Court announced in *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), that "[a] defendant's right to confront ac-

---

6. The Sixth Amendment to the United States Constitution provides, in pertinent part, that "the accused shall enjoy the right ... to be confronted with the witnesses against him...."

7. *See Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965).

cusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S.Ct. at 3166. In this case, the only explanation offered for Joey Riggs' absence from the transfer hearing was his incarceration at a juvenile detention facility. Although the State characterized Mr. Riggs as "unavailable," this representation was not accurate. The witness was available; he simply was not produced at the hearing. Since Joey Riggs was not unavailable within the evidentiary meaning of this term and because there was no pressing public policy advocating his physical non-appearance at the hearing, Appellant was clearly denied his right to confront his accuser. *See* W.Va.R.Evid. 804; *Craig,* 497 U.S. at 850, 110 S.Ct. at 3166.

■ A serious problem presented by the telephonic testimony of Mr. Riggs is the fact that the court was denied the opportunity to observe Mr. Riggs' demeanor in responding to the inquiries asked of him. One court, in addressing the secondary objective of confrontation,[8] noted that "[t]he judge and jury are enabled to obtain the elusive and incommunicable evidence of a witness's deportment while testifying, and a certain subjective moral effect is produced on the witness." *Smith v. State,* 200 Ark. 1152, 1158, 143 S.W.2d 190, 192 (1940). The court in *Smith* explained that this beneficial moral effect "does not arise from the confrontation of the opponent and the witness." *Id.* Rather, "[i]t is the witness's presence before the tribunal that secures this secondary advantage...." *Id.,* 143 S.W.2d at 192–93.

The only cases cited by the State to support its position that the Sixth Amendment right to confrontation does not attach at a transfer hearing both concern the admission of reports and statements constituting hearsay rather than telephonic testimony. *See State ex rel. B.T.,* 145 N.J.Super. 268, 367 A.2d 887 (1976) (police statements ob-

tained without *Miranda* warnings were admissible at transfer hearing); *In re R.G.S.,* 575 S.W.2d 113 (Tex.Civ.App.1978) (juvenile court may consider hearsay diagnostic study reports at a transfer hearing), *cert. denied sub nom. Swink v. Texas,* 445 U.S. 956, 100 S.Ct. 1639, 64 L.Ed.2d 231 (1980). The *R.G.S.* case turned on the fact that hearsay evidence is properly admissible at a transfer hearing. *See* 575 S.W.2d at 116–18. This Court has similarly recognized that the rules of evidence pertaining to hearsay are not strictly applied at transfer hearings based on the non-adjudicatory nature of those proceedings. *See In re E.H.,* 166 W.Va. at 627, 276 S.E.2d at 565 ("failure to give strict adherence to the rules of evidence ... will not be grounds for reversible error at a transfer hearing").

Given this Court's holding in *In re E.H.,* we obviously disagree with the conclusion of the *B.T.* court that the Sixth Amendment right to confrontation does not apply at a transfer hearing. *See* 145 N.J.Super. at 273, 367 A.2d at 889. The *B.T.* court specifically premised its conclusion on the belief that affording due process to a juvenile at a transfer hearing required only "a fair hearing where he is represented by counsel and has an opportunity to be heard and present evidence." *Id.,* 367 A.2d at 889–90. This Court reaches a different conclusion regarding what amounts to due process at a juvenile transfer hearing. *See In re E.H.,* 166 W.Va. at 623–24, 276 S.E.2d at 563 (identifying eight "substantial due process rights that must be accorded a juvenile at a transfer hearing").

This Court has not previously addressed whether telephonic testimony violates a defendant's Sixth Amendment right to confront his accusers. Numerous other tribunals have considered the specific issue of telephonic testimony and its effect on a defendant's due process rights. In *Topping v. People,* 793 P.2d 1168 (Colo.1990), the court ruled that the defendant's Sixth Amendment right to confront witnesses was violated by permitting an emergency room physician to testify at trial by tele-

8. The primary objective of confrontation is "to secure the opportunity of cross-examination." *Smith v. State,* 200 Ark. 1152, 1157, 143 S.W.2d 190, 192 (1940).

phone since the witness was not unavailable but would have been merely inconvenienced if made to appear. *Id.* at 1172. Similarly, in *Gonsoir v. People*, 793 P.2d 1165 (Colo.1990), the defendant's Sixth Amendment right to confront witnesses was held to have been violated by permitting the prosecution's toxicologist, a critical witness, to testify at trial by telephone where the witness' unavailability had not been established. *Id.* at 1167–68. Emphasizing that "[t]he right to cross-examine witnesses under oath ... is fundamental to due process," the court ruled in *Archem, Inc. v. Simo*, 549 N.E.2d 1054 (Ind.App. 1990), *cert. dismissed*, 498 U.S. 1076, 111 S.Ct. 944, 112 L.Ed.2d 1032 (1991), that effective cross-examination was thwarted by admitting a videotaped deposition at trial subject to the telephonic cross-examination of a party who was not able to attend the deposition.[9] 549 N.E.2d at 1059–60; *see also Aqua Marine Products, Inc. v. Pathe Computer Control Sys. Corp.*, 229 N.J.Super. 264, 551 A.2d 195 (1988) (improper admission of telephonic testimony where no showing of special circumstances, no basis for evaluating witness' demeanor, and no reason why continuance could not have been granted); *Town of Geneva v. Tills*, 129 Wis.2d 167, 384 N.W.2d 701 (1986) (holding that while telephone testimony may be permitted in circumstances in which the right to a fair trial will not be jeopardized, telephonic testimony was improperly admitted because of its adverse effect on cross-examination rights).

Given the " 'critically important' " nature of the transfer hearing,[10] we hold that a juvenile is denied his constitutional right to confront his accusers when a critical witness, who has not been demonstrated as unavailable pursuant to the rules of evidence, is permitted to testify by telephone

during a transfer hearing. *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966).

■ As his third assignment of error, Appellant maintains that the transfer hearing was wrongly held after the seven-day period prescribed by statute had passed. Although West Virginia Code § 49–5–10(a) provides that a transfer hearing "shall be held within seven days of the filing of the motion," the statute further states, "unless it is continued for good cause." W.Va. Code § 49–5–10(a). In this case, the motion was filed on January 16, 1992, and set for hearing on January 27, 1992. When Appellant raised this ground at the beginning of the transfer hearing, the trial court retroactively granted a continuance sua sponte after explaining on the record that the hearing was scheduled outside of the statutorily-prescribed seven-day period because of the court's busy docket. The fact that the State did not formally request a continuance is not significant, as we explained in *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981). "[T]hough the word 'continuance' was not expressly used, the court's subsequent docketing of the transfer hearing for 31 October demonstrates that the court in effect granted a continuance." *Id.* at 201, 292 S.E.2d at 611 n. 1. On this assignment, we find no reversible error.

■ Appellant's final assignment of error is that the court ignored favorable social testimony concerning the Appellant's maturity, emotional attitude, and home environment. This Court recognized in syllabus point 2 of *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1990),

 " 'Before transfer of a juvenile to criminal court, a juvenile court judge must make a careful, detailed analysis into the child's mental and physical condition, ma-

---

**9.** However, because counsel failed to preserve this error by timely objection, the error was deemed to have been waived. 549 N.E.2d at 1060.

**10.** The United States Supreme Court in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), stated that: "[i]t is clear beyond dispute that the waiver of jurisdiction is a " 'critically important' " action determining vitally important statutory rights of the juvenile."

*Id.* at 556, 86 S.Ct. at 1054. The Supreme Court buttressed this conclusion by stressing that "[i]n these circumstances, [robbery and rape offenses], considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner [defendant] as the difference between five years' confinement and a death sentence...." *Id.* at 557, 86 S.Ct. at 1055.

turity, emotional attitude, home or family environment, school experience and other similar personal factors.' *W.Va.Code,* 49–5–10(d)." Syl. Pt. 4, *State v. C.J.S.,* 164 W.Va. 473, 263 S.E.2d 899 (1980), *overruled in part on other grounds [in] State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980) and *State ex rel. Cook v. Helms,* 170 W.Va. 200, 292 S.E.2d 610 (1981).

183 W.Va. at 381, 395 S.E.2d at 804. Appellant complains that "[t]estimony concerning these areas was presented to the Court, yet when the Court made it's [sic] findings of fact, not one of these areas was mentioned except evidence offered by a psychiatrist."

This case is inapposite to *Sonja B.,* as that case turned on the trial court's failure to give sufficient consideration to the factors set out in West Virginia Code § 49–5–10(d).[11] 183 W.Va. at 384, 395 S.E.2d at 807; *accord, State v. Michael S.,* 188 W.Va. 229, 423 S.E.2d 632 (1992). Our review of the record convinces us that the circuit court did hear and consider the appropriate social evidence regarding Appellant.[12] The findings of the court do not mention in detail the testimony of each of the witnesses who offered pertinent social testimony. Because we have never admonished trial courts to specifically address in their rulings the testimony of each witness proffering evidence regarding the factors identified in West Virginia Code § 49–5–10(d), we find no reversible error on this issue. *See supra* note 11.

Based on the foregoing reasons, this case is reversed and remanded to the Circuit Court of Jefferson County for further proceedings consistent with this opinion.

Reversed and remanded.

---

**11.** West Virginia Code § 49–5–10(d) provides that: "[t]he court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that...."

**12.** The transfer order specifically mentions that the court heard and considered the testimony of Appellant's mother, aunt, and grandfather, his social worker, and his teacher at the juvenile detention center.