## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-0778** (Fayette  County 12-F-77)

**Christopher Cox,**
**Defendant Below, Petitioner**

**FILED**

**October 2, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner, Christopher D. Cox, by counsel, Jason D. Parmer, appeals the order entered June 26, 2013, in the Circuit Court of Fayette County, that sentenced Petitioner to life imprisonment without mercy, based upon his April 30, 2013, jury conviction of first degree murder without a recommendation of mercy.  The State, by counsel, Derek Austin Knopp, filed a response.

Having carefully reviewed the record, the parties' briefs and arguments, the applicable precedent, and the relevant standard of review, the Court finds that this case presents no new or significant questions of law and no prejudicial error.  For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Petitioner was an inmate at Mount Olive Correctional Complex and was serving a sentence for second degree murder and robbery.  On September 24, 2011, Petitioner and another convicted felon, Joseph B. Braddock, who is the victim, were in the recreational yard of the prison.  According to the testimony at trial, Mr. Braddock and Petitioner were talking to each other when a correctional officer ordered Mr. Braddock to come off the yard.  A correctional officer testified that Mr. Braddock turned to come out of the yard when Petitioner began striking Mr. Braddock in the back of the head and face.  Mr. Braddock fell to the ground and Petitioner began to stomp him. Mr. Braddock died as a result of traumatic brain injury consistent with being kicked in the head.

Petitioner sought to offer the testimony of five[1] inmates in his defense.

---

[1] During trial, one inmate testified that he committed the murder and not Petitioner.
(continued...)

1

Petitioner maintained that he only began fighting Mr. Braddock when Mr. Braddock spit on him and threw the first punch. Petitioner claimed that Mr. Braddock threatened to stab him and was going to pull a knife.[2]

During a pretrial hearing that occurred on April 24, 2013, Petitioner's counsel offered a transport order for the five inmate witnesses, who were all located at Mount Olive. The trial court indicated that it was "very concerned about security for the jury, the security at the courthouse, having six convicted felons[3] from Mount Olive here at the same time." (Footnote added). The trial court determined, "in the interest of safety, that these witnesses should be permitted to testify under oath by way of videoconferencing . . . ." Petitioner objected to the ruling. By Order entered April 29, 2013, the trial court

> advis[ed] the parties that . . . [it] would not transport the defendant's witnesses from Mt. Olive for trial. Those witnesses are convicted felons and it would create a safety risk to the jurors and the public. The Court will provide for the defendant's incarcerated witnesses to testify by video conference to protect the jury and the public.[4]

(Footnote added).

At the conclusion of the jury trial, Petitioner was convicted of first degree murder without a recommendation of mercy. He was subsequently sentenced to life in prison. This appeal followed.

On appeal, Petitioner raises two assignments of error. First, he argues that the trial court abused its discretion by requiring his witnesses to testify by videoconferencing,

---

[1](...continued)
His testimony was struck from the record by the trial court.

[2]At trial, two of the inmates corroborated Petitioner's testimony that Mr. Braddock spit on Petitioner and then Petitioner and Mr. Braddock started fighting. Two other inmates testified that Mr. Braddock had offered them money to kill Petitioner.

[3]The reference by the trial court to six inmates included Petitioner, who would be present in the courtroom during trial.

[4]It is significant to note that at no time before or during trial did Petitioner or his counsel ask the circuit court to have the inmate witnesses appear either in civilian clothing or unshackled while they testified at trial.

because no statute or rule allows testimony of witnesses by videoconferencing at trial and the circuit court did not have the inherent authority to make his witnesses testify by videoconferencing.[5]

We have previously acknowledged the circuit court's discretion and authority to manage and control its proceedings. *See generally Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 459 S.E.2d 374 (1995). In syllabus point two of *State v. Fields*, 225 W. Va. 753, 696 S.E.2d 269 (2010), *cert. denied*, 131 S. Ct. 1044 (2011), this Court held that "[t]o safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion." Additionally, in syllabus point five of *State v. Cobb*, 122 W. Va. 97, 7 S.E.2d 443 (1940), the Court held that "[t]he trial court has a broad discretion in the control of trials and the order of proof." Consequently, our review of Petitioner's challenge regarding the use of videoconferencing is one of abuse of discretion.

There is no a specific rule or statute addressing whether witnesses generally can testify by videoconferencing during trial. West Virginia Trial Court Rule 14.03(b), however, does provide for videoconferencing to be used in criminal cases involving child testimony as follows: "The court may use videoconferencing to obtain the testimony of a child witness in accordance with West Virginia Code § 62-6B-1 to [-5 (2010 & 2014 Supp)]." Additionally, under Rule 14.03(a), videoconferencing may be used during pretrial proceedings "to take and preserve the testimony of a prospective witness for use at trial . . . ."

---

[5]Petitioner does not raise any constitutional grounds in his argument even though his initial objection before the trial court was that it violated due process. That argument, however, was never developed below or before this Court on appeal. Further, while Petitioner relies upon *State v. Gary F.*, 189 W. Va. 523, 432 S.E.2d 793 (1993), as an "analogous case in which the Court has held that allowing an otherwise available accuser to testify by telephone at a juvenile transfer hearing violates the confrontation clause[,]" Petitioner's argument is not persuasive. First, Petitioner makes no confrontation argument before the Court. Second, we are not presented with a situation in which the jury and the parties were unable to observe the witnesses. The Court found in *Gary F.* that "[a] serious problem presented by the telephonic testimony . . . is the fact that the court was denied the opportunity to observe . . . [the witness's] demeanor in responding to the inquiries asked of him." *Id.* at 530, 432 S.E.2d at 800. Thus, the *Gary F.* decision was inextricably tied to telephonic testimony and the lack of any face-to-face confrontation. The videoconferencing used by the trial court in the case sub judice allowed the jury, the parties and the judge to fully observe the witnesses as they testified.

Despite no express statute or rule addressing the use of videoconferencing during trial generally, there is nothing in our jurisprudence which precludes its use. Moreover, videoconferencing has been permitted in criminal trials in other jurisdictions for a variety of reasons. For instance, in *Rivera v. State*, 381 S.W.3d 710 (Tex. Crim. App. 2012), the Texas Court of Appeals upheld the trial court's decision to allow one of the prosecution's witnesses to testify at trial by videoconferencing. The witness had been a crime scene investigator who investigated the crime with which the defendant was charged and who found the defendant's fingerprints. *Id.* at 711. The witness was on active duty in Iraq during the defendant's trial and could not attend the trial. *Id.* Likewise, in *State v. Johnson*, 958 N.E.2d 977 (Ohio Ct. App. 2011), the Ohio Court of Appeals upheld the trial court's decision to allow three witnesses for the prosecution to testify against the defendant by two-way closed circuit television during the defendant's trial for charges including murder. *Id.* at 983. The trial court found that "the procedure was necessary to prevent what was an obvious attempt by the defendant's friends and family to intimidate the witnesses in the case[.]" *Id.* In affirming the trial court's decision, the appellate court determined that "[t]he trial court's use of the two-way video procedure was necessary to further the public policy of justly resolving the criminal case, while at the same time protecting the well-being of the state's witnesses." *Id.* at 989. Finally, in *State v. Seelig*, 738 S.E.2d 427 (N.C. Ct. App.), *review denied* 743 S.E.2d 182 (N.C. 2013), the Court of Appeals of North Carolina affirmed the trial court's decision to allow a witness for the prosecution to testify through a two-way closed circuit web broadcast because the witness could not travel to the trial due to his health. *Id.* at 432-35.

In the instant case, in examining whether the trial court abused its discretion in the manner in which it controlled and managed this criminal trial, the trial court was very concerned over Petitioner's desire to have five inmates, each convicted of significant felonies including murder, transported to court to testify during Petitioner's defense. The trial court determined this posed a significant security threat to everyone connected with the trial and that the court had a significant interest in maintaining the safety of all the persons located in the courtroom and the courthouse. Consequently, the trial court determined that by allowing the witnesses to testify through video conference it would not only protect Petitioner's right to call those witnesses in his defense, but it would also eliminate the security threat posed by transporting the inmates to the courthouse. Moreover, the circuit court also gave the following instruction prior to the testimony of the witnesses:

> If I could have your attention, ladies and gentlemen of the jury. We have now reached the point where certain evidence is going to be presented to you by way of video, on the TV screen. As I indicated to you earlier, you are to consider this evidence as if this witness was sitting right here in this jury box testifying before you personally. Make no distinction in the way that you

4

treat the testimony of this witness from any other witness that has testified in the matter. Because of circumstances in this particular case, we're taking this by way of video rather than personally.

We find that the circuit court did not abuse its discretion in requiring Petitioner's witnesses to testify by way of videoconferencing.[6]

In his second assignment of error, Petitioner argues that the trial court committed plain error when it allowed his witnesses to testify in prison garb and shackles. This alleged plain error stems from Petitioner's failure to request that his witnesses be allowed to testify in different attire and without shackles. Petitioner claims that "[g]iven that these witnesses were testifying by video from Mt. Olive, it was not necessary to physically restrain the witnesses in view of the jury." Further, Petitioner now claims it was error for the trial court not to give a cautionary instruction regarding the physical appearance of the defense witnesses, even though such an instruction was never requested.

This Court has previously held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

We held in syllabus points three and four of *State v. Allah Jamaal W.*, 209 W. Va. 1, 543 S.E.2d 282 (2000):

The issue of whether a witness for the defendant should be physically restrained or required to wear prison attire while testifying before a jury is, in general, a matter within the sound discretion of the trial judge and will not be reversed absent a showing of an abuse of that discretion.

The trial judge should not permit an incarcerated defense witness to appear at trial in the distinctive attire of a prisoner. However, the burden is upon the defendant to timely move that

---

[6]We summarily reject Petitioner's reliance upon West Virginia Code § 62-8-5 (2010), because the statute has limited application to "an offense punishable under sections one [§ 62-8-1] and two [§ 62-8-2][,]" concerning offenses by inmates and punishment of convicts. The Petitioner was indicted for first degree murder under West Virginia Code § 61-2-1 (2010), not under West Virginia Code § 62-8-1.

an incarcerated witness be permitted to testify at trial in civilian clothes. If the trial judge denies the motion, the judge must set forth on the record the reasons for denying said motion.

The hurdle that Petitioner cannot overcome in this case is that he never requested the trial court to permit his witnesses to appear either in civilian clothing or unshackled. The trial court was not asked to make any decision regarding the appearance of Petitioner's witnesses, even though Petitioner was fully aware that his witnesses were inmates at Mt. Olive. The burden under *Allah Jamaal W.* was on Petitioner to timely request the trial court to allow his witnesses to be permitted to testify in civilian clothes and unshackled. *See id*. at 2, 543 S.E.2d at 283, Syl. Pt. 4. Petitioner never made such motion before the trial court. Thus, no error was committed by the trial court as it was never asked to rule on the issue.

In order for the plain error doctrine to be triggered, there must have been an error committed by the trial court that was plain. *See Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, Syl. Pt. 7. In this case, there was no such error. Moreover, even assuming, arguendo, that this Court found an error, that error would neither have affected Petitioner's "substantial rights" nor seriously affected the fairness of the judicial proceedings given that the crime occurred in a prison and involved the prison environment. *See id*. The jurors knew during the entire course of the trial that Petitioner and his witnesses were prison inmates whether they were dressed in prison garb and shackles or not. Accordingly, we decline to invoke the plain error doctrine regarding this issue.

For the foregoing reasons, the decision of the circuit court is affirmed.

Affirmed.

**ISSUED**: October 2, 2014

**CONCURRED IN BY**:
Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6