395 S.E.2d 803

**STATE of West Virginia, Appellee,**

v.

**SONJA B., Appellant.**

**No. 19514.**

Supreme Court of Appeals of
West Virginia.

July 27, 1990.

---

Francis M. Curnutte, III, Madison, for Sonja B.

Roger W. Tompkins, Atty. Gen., Joanna Tabit, Asst. Atty. Gen., Charleston, for State.

**PER CURIAM:**

This case is before us pursuant to an appeal by Sonja B.[1], a juvenile who was transferred to adult jurisdiction. The ap-

---

1. Consistent with our practice in cases involving sensitive matters, we use the juvenile's (last) initials rather than the last name. *See Benjamin R. v. Orkin Exterminating Company, Inc.*, 182 W.Va. 615, 390 S.E.2d 814 n. 1 (1990) (citing *In re Johnathan P.*, 182 W.Va. 302, 387 S.E.2d 537 n. 1 (1989)); *State v. Murray*, 180 W.Va. 41, 375 S.E.2d 405, 408 n. 1 (1988).

pellant contends that the court below erred in finding that there was probable cause to believe that she committed an offense which would be a felony if committed by an adult, and in determining that there was clear and convincing proof that transfer was warranted given her mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors. We agree.

A juvenile petition was filed on December 28, 1988, in the Circuit Court of Boone County by Boone County Deputy Sheriff Jack Kelly.[2] This petition charged that the appellant had committed acts which would be crimes under state law or municipal ordinance if she were an adult. These acts were: entering without breaking a vehicle under W.Va.Code § 61–3–12 (1989); grand larceny under W.Va.Code § 61–3–13 (1989); forgery and uttering under W.Va.Code § 61–4–5 (1989); and tampering with a vehicle under W.Va.Code § 17A–8–6 (1986). A preliminary hearing was held before the juvenile referee on January 10, 1989. At this hearing, probable cause to believe the appellant was delinquent was established by the referee, and it was then recommended that an adjudicatory hearing be held.[3]

On February 22, 1989, the state filed a motion to transfer the appellant to adult jurisdiction pursuant to W.Va.Code § 49–5–10 (1986). This code provision operates to transfer a juvenile from juvenile jurisdiction to adult jurisdiction if certain requirements are met. In this case, the state asserted that the appellant's situation met the requirements found specifically in W.Va.Code § 49–5–10(d)(5). This subdivision provides that a juvenile may be transferred if the judge finds, after consideration of several factors identified in W.Va. Code § 49–5–10(d), that there is probable cause that such child "has committed an offense which would be a felony if committed by an adult: Provided, That such child has been previously adjudged delinquent for an offense which would be a felony if the child were an adult." This section was applicable in this case because the appellant had been charged in the juvenile petition with two felonies, and she had previously been adjudged delinquent for an offense which would have been grand larceny if it had been committed by an adult.

A transfer hearing was subsequently held on March 20, 1989, and the juvenile was seventeen-years-old at that time. At this hearing, the state presented two witnesses. Carol Bailey, a juvenile probation officer in Boone County, testified that she had professional contact with the appellant in 1986, when the appellant was charged with and pleaded guilty to grand larceny. According to Ms. Bailey's testimony, subsequent to this guilty plea the appellant was placed in the custody of the West Virginia Children's Home. Later she was placed at the West Virginia Industrial Home for Youth and after that at a group home in Huntington, West Virginia. She only lasted there for one week, was then placed in the Cabell County Youthful Detention Center, and then back to the West Virginia Industrial Home for Youth. Ms. Bailey informed the court that these various placements were a result of behavioral problems at each one. Ms. Bailey further testified that she had never had much contact with the appellant and that she had never really counselled her because the appellant would not remain in Boone County long enough for her to do so. When asked if she had occasion to evaluate the appellant's "mentality", Ms. Bailey answered that she did not believe she was qualified to make such an evaluation. She testified that Sonja was married, had a child, and was "emancipated."[4] When asked whether the juve-

2. *See* W.Va.Code § 49–5–7 (1986).

3. *See* W.Va.Code §§ 49–5–9(a) and 49–5–9(a)(3) (1986).

4. West Virginia Code § 49–7–27 (1986) provides that "[a] child over the age of sixteen may petition a court to be declared emancipated." This process involves the filing of the petition itself, publishing a legal advertisement and serving the parents as respondents. There is no evidence that the appellant has complied with the requirement in this statute. Even if she had complied, it would be of no significance in a transfer hearing, for this code provision provides that an emancipated child remains a child for

nile was in school, the witness seemed not to know for certain, indicating that it had not been reported if she was in Boone County schools. Furthermore, she was unaware of the juvenile's home or family situation except that she had lived for a time with a grandmother who was now deceased. Ms. Bailey did state her opinion that she believed the appellant had already been through the juvenile system unsuccessfully, and that there was nothing more the system could do for her. The record is devoid of any information as to what efforts the system had made at rehabilitation.

The other witness who testified on behalf of the state was Jack Kelly, the Boone County Deputy Sheriff who filed the juvenile petition against the appellant. Deputy Kelly testified that he had contact with the appellant through his work as a police officer. He stated that during his evening shift, he would encounter her in town in the late hours of the evening and "would have to run her out of town because she was a juvenile." Deputy Kelly was asked to characterize the appellant's "mentality", and replied that she was "streetwise". He explained that she knew how the court system worked and that she believed that the juvenile system could not do any more to her than had already been done. Deputy Kelly also relayed to the court an incident with the appellant that occurred on January 3, 1989. He testified that while he was on duty, the appellant approached him concerning the forgery charge she was facing. According to Deputy Kelly, the appellant told him she wanted to give him a statement and then proceeded to "come right out and sa[y] she was the one that wrote the check and cashed the check, so I started my statement." No further detail of this alleged confession was elicited, and this was the only evidence adduced at the

transfer hearing concerning the offense she allegedly committed.

We find that there was insufficient evidence presented at the transfer hearing to prove probable cause. We additionally find that there was insufficient consideration given to the factors set forth by statute which the Court must consider.[5] West Virginia Code § 49–5–10(d), (1985), in combination with subsection (5), provides that:

The court may, *upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors,* transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that: A child, sixteen years of age or over, has committed an offense which would be a felony if committed by an adult: Provided, That such child has been previously adjudged delinquent for an offense which would be a felony if the child were an adult. (Emphasis added)

■■■ Before a juvenile can be transferred to adult jurisdiction, the court must find that there is probable cause to believe the juvenile committed an offense contained in the juvenile petition.[6] In making this decision, the court may not "rely upon conclusions of the juvenile referee. The trial judge himself must make an independent determination upon substantial facts that probable cause exists." *In Interest of Clark,* 168 W.Va. 493, 495, 285 S.E.2d 369, 370 (1981). As we stated in syllabus point 1 of *In Interest of Moss,* 170 W.Va. 543, 295 S.E.2d 33,

Probable cause for the purpose of transfer of a juvenile to adult jurisdiction is more than mere suspicion and less than clear and convincing proof. Probable cause exists when the facts and circumstances as established by probative

the purposes of juvenile proceedings under W.Va.Code § 49–5–1 to –18 (1986 & Supp.1990).

5. Even though the court was required to consider the factors found in W.Va.Code § 49–5–10(d), in this situation, such consideration is not mandatory if the juvenile has been charged with a capital offense. *See State ex rel. Cook v. Helmes,* 170 W.Va. 200, 292 S.E.2d 610 (1981).

6. We held in syllabus point 3 of *In re E.H.,* 166 W.Va. 615, 276 S.E.2d 557 (1981) that "[u]nder W.Va.Code, 49–5–10 (1978), at a transfer hearing as a standard of proof the State need only establish that there is probable cause to believe that a child has committed one of the offenses therein enumerated."

evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the accused committed it.

There was no further inquiry into any other facts or the circumstances underlying the charges in the juvenile petition. The record is barren of any evidence concerning what check the appellant signed and cashed and how this action involved an illegal act. "There can be no presumption that the charges made in a delinquency petition are true." *In Interest of S.M.P.*, 168 W.Va. 626, 628, 285 S.E.2d 408, 410 (1981). In addition, mere conclusory statements by witnesses, devoid of the circumstances of the crime which would link the juvenile to its commission, cannot be the basis for a finding of probable cause by the court. *See In Interest of Clark*, 168 W.Va. at 495, 285 S.E.2d at 370; *In Interest of S.M.P.*, 168 W.Va. at 628, 285 S.E.2d at 410.

■ In addition to there being a lack of probable cause to transfer, we find that there was inadequate consideration given by the court to the statutory factors found in W.Va.Code § 49–5–10(d). As we stated in syllabus point 4, *State v. C.J.S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980) (quoting *W.Va.Code*, 49–5–10(d)) *overruled in part on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980) and *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981), "[b]efore transfer of a juvenile to criminal court, a juvenile court judge must make a careful, detailed analysis into the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and other similar personal factors." The only evidence offered at the transfer hearing on these factors was the testimony of Deputy Kelly and Carol Bailey, neither of whom was able to provide much information on Sonja's home or family situation, her social background, educational status, or mental and emotional condition. Although mention was made by Ms. Bailey of a discharge summary from Salem in checking Sonja's age, nothing as to its contents were presented for consideration of the court. It would also seem that in view of the length of time the juvenile system had

dealt with Sonja and the number of placements she had been through, there surely must have been probation reports, psychological evaluations, or even social summaries that could have been examined in order to discern why she encountered so much difficulty with the system from such an early age, and to determine whether further intervention by way of counselling, education or job training, or therapeutic placement were in order.

The juvenile law of this state, both statutory and that developed judicially, has been designed to rehabilitate the child. We stated in *State v. D.D.*, 172 W.Va. 791, 795, 310 S.E.2d 858, 862 (1983) that

A holistic appraisal of the child and his environment is consistent with the broad rehabilitative purposes of juvenile law, and reflects a legislative recognition that unlawful behavior is not simply a product of the evils of human nature; that criminal, anti-social behavior may have its genesis in a broken or violent home, in educational difficulties, or in poverty. The causes of a child's behavior, therefore, must be analyzed if the rehabilitative, child-saving purpose of our child welfare law is to be fulfilled.

In *C.J.S.*, 164 W.Va. at 473, 263 S.E.2d at 899, we found that a remand on a transfer hearing was warranted because the court had only made a cursory inquiry into the factors required in subsection (d). In that case, we found significance in the fact that no expert witnesses, no physicians or psychologists testified, and no school records were assessed. *Id.* 164 W.Va. at 475, 263 S.E.2d at 903. We find like deficiencies in the case before us. "Although the state is no longer expressly required to prove by clear and convincing evidence that there are 'no reasonable prospects for rehabilitating the child through resources available to the court'", the court is required to consider these factors before approving transfer. *D.D.*, 172 W.Va. at 795, 310 S.E.2d at 861 (quoting *State ex rel. Cook v. Helms*, 170 W.Va. 200, 200, 292 S.E.2d 610, 612 (1981)).

We believe that based on the fact that there was insufficient evidence adduced at

the transfer hearing to prove probable cause and that there was insufficient consideration given to the factors required in W.Va.Code § 49–5–10(d), the court erred in granting the transfer of the appellant. The order of the Circuit Court of Boone County is therefore reversed, and this case is remanded for such further juvenile proceedings as may now be appropriate.

Reversed and remanded.