423 S.E.2d 632

**STATE of West Virginia (Trooper J.J. Miller), Plaintiff Below, Appellee,**

v.

**MICHAEL S., an Infant Under the Age of 18 Years; and Sylvia Smith, Mother and Guardian of Said Infant, Defendants Below,**

**MICHAEL S., an Infant Under the Age of 18 Years, To–Wit: 17 Years Old, Defendant Below, Appellant.**

No. 21265.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Oct. 23, 1992.

Tracy B. Lusk, Public Defender Corp., Welch, for appellant.

Mario Palumbo, Robert M. Nunley, Office of the Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Michael S.,[1] appeals from the February 28, 1992 order of the Circuit Court of McDowell County granting the motion of the appellee, the State of West Virginia (by Trooper J.J. Miller), requesting that the appellant be transferred from the jurisdiction of the juvenile court to the adult criminal jurisdiction of the trial court. The appellant contends that the trial court erred in failing to consider the rehabilitation prospects available to the appellant. Because we agree with appellant's contention, this case is remanded for evaluation of the appellant's rehabilitation potential within the juvenile system.

The appellant, who was born on March 27, 1974, was charged in McDowell County on January 21, 1992, by a juvenile petition seeking an adjudication of delinquency. The petition alleged that on January 17, 1992, the appellant had committed an act which, if committed by an adult, would be an offense of violence to the person constituting a felony. Specifically, the petition alleged that the appellant had committed malicious assault in violation of *W. Va. Code*, 61–2–9 [1978] and was in possession of a deadly weapon as a minor in violation of *W. Va. Code*, 61–7–8 [1989]. A hearing was held and the appellant was judged delinquent.

Following the delinquency hearing, the State moved the trial court to waive juvenile jurisdiction and transfer this case to the court's adult criminal jurisdiction pursuant to *W. Va. Code*, 49–5–10 [1978].[2] A transfer hearing was held on February 20, 1992, at which time the appellant was five weeks shy of his eighteenth birthday. At the hearing, the State presented three witnesses, each of whom testified only to the probable cause issue of the offense. The appellant does not contest that the state has probable cause to believe that he was (1) over sixteen years of age and (2) committed an offense of violence to the person which would be a felony if committed by an adult.

The trial court also considered a "social history information" report concerning the appellant prepared by Carolyn Stuart, the juvenile probation officer of McDowell County. The report noted that the appellant had "no major discipline problems" at home, but that the appellant's mother had been notified approximately three times of the appellant's "misbehavior" at school over the preceding three years.[3] The report also noted that "[e]very now and then neighbors would report to [appellant's mother] that [the appellant] was in the company of delinquent peers."

The report did not comment on the mental status or maturity of the appellant, although it did note that his physical appearance seemed to be that of a "normal, healthy 17–year–old." The report also did

1. As this case involves a sensitive matter, we shall follow our traditional practice using only the last initial of the juvenile defendant. *See State v. Sonja B.*, 183 W.Va. 380, 381 n. 1, 395 S.E.2d 803, 804 n. 1 (1990) (citing cases).

2. *W. Va. Code*, 49–5–10 [1978] states, in pertinent part:

(a) Upon written motion of the prosecuting attorney filed at least eight days prior to the adjudicatory hearing and with reasonable notice to the child, the parents, guardians, or custodians of the child, and the child's counsel, the court shall conduct a hearing to determine if juvenile jurisdiction should be waived and the proceeding should be transferred to the criminal jurisdiction of the court. Any motion filed in accordance with this section shall state, with particularity, the grounds for the requested transfer, including the grounds relied upon set forth in subsection (d) of this section, and the burden shall be upon the

State to establish such grounds by clear and convincing proof. Any hearing held under the provisions of this section shall be held within seven days of the filing of the motion for transfer unless it is continued for good cause.

. . . .

(d) The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

. . . .

(4) A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult[.]

3. Exactly what this "misbehavior" entailed is not evident from the record.

not comment on the rehabilitation potential of the appellant, and concluded:

> that based on the community sentiment, there is a general feeling that Michael should not be placed back in the home with his mother at this time. It is also believed by this officer that psychiatric and psychological evaluations are needed for the defendant. Also, this officer believes that an out of school environment such as homebound would be more suitable ·given what took place at school.

At the transfer hearing Mrs. Stuart testified that she had not been "looking at anything towards rehabilitation" in the report, but that "most of the places we look to to house juveniles, usually after they're about 16, it's just hard to get a placement for them." She also testified that beyond a forty-five minute conversation with the appellant, she had "not had enough contact to make a judgment about [the appellant's] maturity," nor had she been to the appellant's home or spoken with any relatives of the appellant beyond his mother.

The trial court also admitted into evidence a psychological report of the appellant performed by a school psychologist three months prior to the incident in question. The psychological report documented that the appellant was placed in special education classes for the learning disabled, but was "not having any difficulties with any of his subjects." Attached to the psychological report were school records showing that the appellant was frequently cited for discipline problems in school, usually in the form of tardiness for classes.

The February 28, 1992 order of the trial court granted the motion for transfer, stating, in part:

> That the Court in considering the infant defendant's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, finds that the infant defendant was sufficiently mature to understand the consequences of his behavior, and that there are no reasonable alternatives available to the Juvenile Court that are designed to rehabilitate the infant defendant. The Court further finds that the psychological evaluation performed in this matter shows that the learning disability of the infant defendant was not such as would cause the infant defendant to fail to be able to appreciate the consequences of his behavior, particularly in light of the fact that the infant defendant contacted the victim to express remorse for the behavior of the infant defendant.

In *State v. Sonja B.*, 183 W.Va. 380, 384, 395 S.E.2d 803, 807 (1990), we noted that:

> The juvenile law of this state, both statutory and that developed judicially, has been designed to rehabilitate the child. We stated in *State v. D.D.*, [172] W.Va. [791], [795], 310 S.E.2d 858, 862 (1983) that
>
> A holistic appraisal of the child and his environment is consistent with the broad rehabilitative purposes of juvenile law, and reflects a legislative recognition that unlawful behavior is not simply a product of the evils of human nature; that criminal, anti-social behavior may have its genesis in a broken or violent home, in educational difficulties, or in poverty. The causes of a child's behavior, therefore, must be analyzed if the rehabilitative, child-saving purpose of our child welfare law is to be fulfilled.

Furthermore, in *State v. Beaman*, 181 W.Va. 614, 617, 383 S.E.2d 796, 799 (1989), we stated:

> In order to properly determine whether a juvenile defendant should be transferred to adult jurisdiction, a court must consider the purpose behind affording a juvenile such a hearing. In *State ex rel. Smith v. Scott*, 160 W.Va. 730, [735], 238 S.E.2d 223, 226 (1977), we recognized that '[i]n theory the transfer hearing is invoked by the State where there are special circumstances [footnote omitted] which may justify relinquishment of juvenile jurisdiction. The hearing is not intended to establish guilt.' Moreover, we stated that the legislative intent behind the enactment of the juvenile statute was 'that juveniles should, in the ordinary case, be subject to juvenile court jurisdiction. Transfer therefore

should be the exception and not the rule.' *Id. See Kent v. United States*, 383 U.S. 541, 560–61, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97 (1966).

■ It is clear from the citations to the foregoing cases that our child-welfare law serves a rehabilitative, child-saving purpose that should only be foregone in special or exceptional circumstances. *W. Va. Code*, 49–5–10(d) [1978] outlines the considerations a trial court must analyze before the juvenile jurisdiction may be relinquished in favor of adult criminal jurisdiction.[4] In this case the trial court gave insufficient consideration to those factors set forth by statute which must be considered upon a motion for transfer. Specifically, the record reveals that no evidence concerning the appellant's home or family environment was presented for the trial court's consideration, and only cursory examinations of his rehabilitation potential, maturity and mental status were performed.

In syllabus point 2 of *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1990), we stated:

' "Before transfer of a juvenile to criminal court, a juvenile court judge must make a careful, detailed analysis into the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and other similar personal factors." *W. Va. Code*, 49–5–10(d).' Syl.Pt. 4, *State v. C.J.S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980), *overruled in part on other grounds State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980) and *State ex rel. Cook v. Helms*, [170] W.Va. [200], 292 S.E.2d 610 (1981).

■ Because the trial court failed to make a "careful, detailed analysis" of all of the considerations enunciated in *W. Va. Code*, 49–5–10(d), this case is reversed and remanded for further proceedings whereby the appellant will be given the opportunity to show that he has rehabilitation potential in the juvenile justice system, and the State will have an opportunity to show that there are no reasonable juvenile rehabilitation options available to the appellant.[5]

For the foregoing reasons, this case is reversed and remanded to the Circuit Court

---

4. This is not to imply that a court must always address the considerations outlined in *W. Va. Code*, 49–5–10(d) [1978]. The legislature has specified that juvenile jurisdiction may be waived without an analysis of these considerations when there is probable cause to believe that the juvenile has committed one of the serious crimes listed in *W. Va. Code*, 49–5–10(d)(1) [1978]. As we stated in syllabus point 2 of *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981):

> When a court finds that there is probable cause to believe that a juvenile has committed one of the crimes specified in *W. Va. Code*, 49–5–10(d)(1) (treason, murder, robbery involving the use of or presenting of deadly weapons, kidnapping, first-degree arson, and first-degree sexual assault), the court may transfer the juvenile to the court's criminal jurisdiction without further inquiry. To the extent this holding is inconsistent with *State v. R.H.*, W.Va. [166 W.Va. 280], 273 S.E.2d 578 (1980) and *State v. C.J.S.*, W.Va. [164 W.Va. 473] 263 S.E.2d 899 (1980), those cases are overruled.

The instant case is not one where the exceptions of *W. Va. Code*, 49–5–10(d)(1) apply; therefore, the considerations enunciated at the outset of *W. Va. Code*, 49–5–10(d) must be analyzed.

5. It is not enough for the appellant to show that the State has not sufficiently examined his rehabilitation potential and options in the juvenile

system. The appellant should affirmatively show that he has rehabilitation potential and options within the juvenile system. For example, in *In the Interest of H.J.D.*, 180 W.Va. 105, 107, 375 S.E.2d 576, 578 (1988), we noted that the juvenile in that case had presented evidence from a "youth specialist" to the effect that the juvenile had suffered negative effects from long-term institutionalization, but had recently made progress. We ruled that such evidence was insufficient, in that case, to defeat the "clearly wrong" standard of review applied to a trial court's findings of fact in a transfer hearing. In syllabus point 1 of that case, we stated:

> 'Where the findings of fact and conclusions of law justifying an order transferring a juvenile proceeding to the criminal jurisdiction of the circuit court are clearly wrong or against the plain preponderance of the evidence, such findings of fact and conclusions of law must be reversed. W.Va.Code, 49–5–10(a) [1977] [now, 49–5–10(e) [1978]].' Syl. pt. 1, *State v. Bannister*, 162 W.Va. 447, 250 S.E.2d 53 (1978).

In the instant case, however, no evidence concerning the rehabilitation options or potential of the juvenile was presented. Therefore, this case must be remanded for further evidence.

of McDowell County for further proceedings consistent with this decision.

Reversed and remanded with directions.