457 S.E.2d 120

**In the Matter of JOSEPH M., Infant; and Virgil M. and Anna M., Parents of Said Infant, Appellants.**

**No. 22506.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided March 24, 1995.

Gordon E. Billheimer, Montgomery, for appellants.

Dawn E. Warfield, Deputy Atty. Gen., Charleston, for the State.

PER CURIAM:

This is an appeal by Joseph M. (hereinafter "the Appellant")[1] and his parents, Virgil and Anna M., from an April 29, 1994, order of the Circuit Court of Nicholas County di-

---

1. Due to the sensitive nature of the matter presently before the Court, we follow our traditional practice of using only the last initial of the juvenile defendant. *See State v. Sonja B.*, 183 W.Va. 380, 381 n. 1, 395 S.E.2d 803, 804 n. 1 (1990).

recting that the Appellant, age sixteen at the time of the alleged misconduct, be tried as an adult for malicious wounding of a police officer. The Appellant contends that the lower court erred by transferring the action to adult jurisdiction and requests this Court to order the dismissal of the State action. We find that the evidence was sufficient to support the decision of the lower court, and we affirm the transfer of this matter to adult status.

## I.

On October 30, 1993, the Appellant was a passenger in a vehicle operated by his brother, nineteen-year-old Daniel M. As the brothers returned from a friend's home at which they had consumed alcoholic beverages, Daniel M. lost control of the vehicle and hit a tree. The incident was reported to the police by a local resident, and Officer Rodney Truman of the Summersville Police Department arrived to investigate the accident. As Officer Truman exited his vehicle, Daniel M. began to flee the scene on foot, and the Appellant followed his brother over an embankment.[2] Officer Truman pursued the brothers, and an altercation occurred when Officer Truman apprehended them. Officer Truman testified that both brothers hit and kicked him. He received a cut on the head during this altercation, but he was unable to determine which individual struck him. The knife wound in the back of Officer Truman's head cut him from ear to ear and required twenty-seven staples. Officer Leslie Bailey and Officer Paul O'Dell arrived at the scene during the altercation and subdued the brothers.

Daniel M. was later indicted for malicious wounding, and the Appellant was remanded to the Southern Juvenile Detention Center for thirty days.[3] At a hearing held before the lower court on December 3, 1993, the State requested that the Appellant be transferred to adult status.[4] Subsequent to two continuances, both requested by the Appellant, the lower court determined during an April 11, 1994, hearing, that a transfer to adult status was appropriate.

## II.

The Appellant contends that the State failed to prove that there are no reasonable prospects for rehabilitation of the Appellant, required by West Virginia Code § 49–5–10 (1992)[5] as a prerequisite to transfer, and that the lower court erred in transferring the matter to adult status.[6]

---

**2.** Patty Nestor, a local resident, reported in a handwritten statement to the police that "[w]hen the Police car pulled up I heard one of them tell the other one, 'come on, let's get the f— out of here.' They took off running over the hill.... I heard the Police Officer tell them to stop but they kept running."

**3.** Although the Appellant moved for release from detention, the lower court denied the motion, finding that the family of the Appellant was unable to supervise the Appellant and that the Appellant lacked respect for authority.

**4.** On December 8, 1993, after posting bond of $25,000, the Appellant was permitted to return to his home on home confinement, on the condition that the Appellant would be tutored and that no alcohol or alcohol containers were allowed in the home.

**5.** West Virginia Code § 49–5–10 states, in pertinent part, as follows:

(a) Upon written motion of the prosecuting attorney ... and with reasonable notice to the child, the parents, guardians, or custodians of the child, and the child's counsel, the court shall conduct a hearing to determine if juvenile jurisdiction should be waived and the proceeding should be transferred to the criminal jurisdiction of the court.

. . . .

(d) The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

. . . .

(4) A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult[.]

**6.** Under certain circumstances, however, we have recognized that the lower court need not engage in the consideration of these specific factors. As we explained in the pertinent portion of syllabus point 2 of *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981):

When a court finds that there is probable cause to believe that a juvenile has committed one of the crimes specified in *W.Va.Code*, 49–5–10(d)(1) (treason, murder, robbery involving

■ In syllabus point 2 of *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1992), we explained the following:

" 'Before transfer of a juvenile to criminal court, a juvenile court judge must make a careful, detailed analysis into the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and other similar personal factors.' *W.Va.Code*, 49–5–10(d)." Syl.Pt. 4, *State v. C.J.S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980), *overruled in part on other grounds [sub nom.] State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980) and *State ex rel. Cook v. Helms*, [170] W.Va. [200], 292 S.E.2d 610 (1981).

■ We have also indicated that, as part of this statutory analysis, an evaluation of the prospects for rehabilitation must be undertaken. *State v. Michael S.*, 188 W.Va. 229, 423 S.E.2d 632 (1992). However, we explained in *Michael S.* that it is not enough for the child "to show that the State has not sufficiently examined his rehabilitation potential and options in the juvenile system. The [child] . . . should affirmatively show that he has rehabilitation potential and options within the juvenile system." 188 W.Va. at 232 n. 5, 423 S.E.2d at 635 n. 5. In *Michael S.*, the record contained no evidence of the juvenile's home or family environment and scant evidence of rehabilitative potential; thus, the case was remanded for development of the issue of rehabilitative potential. 188 W.Va. at 232, 423 S.E.2d at 635.

■ In the present matter, however, the lower court thoroughly evaluated the factors enumerated in West Virginia Code § 49–5–10, including an analysis of the Appellant's potential for rehabilitation. In addition to testimony received from the police officers who were present at the scene of the altercation, Nicholas County Deputy Sheriff T.R. Painter also testified that he had been called to the home of the Appellant's parents in November 1993 on a domestic violence complaint. Both parents had been intoxicated upon his arrival, the father was drinking

whiskey in the officer's presence, and the mother passed out as the officer escorted her to the home of her older son. Deputy Painter also explained that the father was under investigation and that he had a history of alcohol-related offenses.

Ralph S. Smith, Jr., M.D., a specialist in child psychiatry, testified that he had examined the Appellant on April 8, 1994, and that the Appellant had expressed neither remorse for his actions nor empathy toward the injured police officer. Dr. Smith also explained that the Appellant's blood alcohol level of .25 on the night of the incident suggested that he had developed tolerance for alcohol.

The lower court questioned Dr. Smith concerning the potential for rehabilitation, specifically asking whether the Appellant could be treated and rehabilitated. Dr. Smith responded by explaining that the alcohol problem was a treatable condition for which the Appellant could receive counseling and referral to self-help groups. Due to the necessary parent intervention in such alcohol treatment, however, Dr. Smith concluded that the difficulties at home would require family counselling.

In its conclusion, the lower court stated as follows:

Now, the most difficult finding of fact that I had to make dealt with rehabilitation potential.

The Court would find as a matter of fact that in order for a juvenile to be rehabilitated, he must first admit that there is a problem and, secondly, be susceptible to treatment for that problem.

The Court finds, based on the evidence presented by the infant Respondent, he does not have responsibility for the actions that occurred or the injury that occurred to Patrolman Truman; and that he has not displayed to this Court that he has taken responsibility for any actions that may have occurred where they amount to malicious assault, unlawful wounding, assault

---

the use of weapons, kidnapping, first-degree arson, and first-degree sexual assault), the court may transfer the juvenile to the court's criminal jurisdiction without further inquiry.

The charge against the Appellant in the present case is not one where the above exceptions apply; therefore, the considerations enunciated in W.Va.Code § 49–5–10(d) must be analyzed.

and battery, or whatever they would amount to. He has taken responsibility for none of those actions.

Having reviewed the evidence on rehabilitation received by the lower court, we conclude that the lower court sufficiently considered all necessary and relevant factors in making the determination to transfer this case to adult status, including the issue of potential rehabilitation. We therefore affirm the decision of the lower court.

Affirmed.