481 S.E.2d 747

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Patricia Lynn SMITH, Defendant Below, Appellant.**

**No. 23421.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 13, 1996.

PER CURIAM:

This case is before this Court[1] upon an appeal from the final order of the Circuit Court of Hampshire County, entered on April 5, 1995. The appellant, Patricia Lynn Smith, was convicted by a jury of the offense of murder of the second degree, *W. Va.Code*, 61–2–1 [1991], and of the offense of conspiracy, *W. Va.Code*, 61–10–31 [1971]. The appellant was sentenced to forty years in the penitentiary upon the second degree murder conviction and not less than one nor more than five years upon the conspiracy conviction, the sentences to run consecutively.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, this Court is of the opinion that the convictions should be affirmed.

I

The facts in this case are egregious and concern the shooting death of Thomas G. Conard by the appellant and Dywayne S., the appellant's sixteen-year-old son.[2] In particular, the evidence at trial indicated that the appellant facilitated the involvement of Dywayne S. in the shooting and later sought to have her son take responsibility for the incident.

The appellant and Conard, her live-in boyfriend of a number of years, and Dywayne S., the appellant's son from a previous marriage, resided in a mobile home in rural Hampshire County. In addition, three young children born to the appellant and Conard, i.e., Sabrina, Amber and Thomas, also resided in the mobile home. The appellant was the mother of two other children from a previous marriage. Those children were Donald, who lived with the appellant's mother in Hampshire County, and Melinda, who had recently moved to the State of Maryland.

H. Charles Carl, III, Ansel & Carl, Royce B. Saville, Romney, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. As in *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1990), we continue the practice of using a minor's last initial, rather than the minor's last name. 183 W.Va. at 381 n. 1, 395 S.E.2d at 804 n. 1.

Unfortunately, the relationship between the appellant and Conard was tempestuous, and the record contains substantial testimony of arguments, instances of shouting and threatening, and the use of profanity in the mobile home. Such conduct was mutual between the appellant and Conard. However, although the appellant asserted that Conard had, at times, struck her, the appellant never established below that she had ever received physical injuries or had ever sought medical treatment as a result of Conard's actions. Moreover, although the record contains evidence that Conard disciplined the children by striking or paddling them, no evidence was submitted to the effect that the children had received physical injuries or had received medical treatment because of Conard's conduct.

Conard's death occurred in the early morning hours of June 21, 1994. The morning before, Conard had become angered and, according to the children, had struck the appellant's head against the side of the mobile home. The reason for the dispute is unclear and, thereafter, the appellant went to her mother's residence. Upon the appellant's return to the mobile home on the evening of June 20, Conard and the appellant engaged in an argument concerning whether Melinda, the appellant's daughter, should remain in the State of Maryland. At that time, Conard allegedly threatened to kill the appellant. Later, Conard fell asleep upon the couch.

While Conard was sleeping upon the couch, the appellant placed Sabrina, Amber and Thomas in the car next to the mobile home. Then, as stated in the petition for appeal, Dywayne S. pointed a rifle at Conard, and, with the appellant holding the barrel, pulled the trigger. The rifle misfired, yet did not awaken Conard. Dywayne S. then reloaded the rifle and shot and killed Conard, with the appellant, again, holding the weapon. According to the appellant's statement later given to the West Virginia State Police, and admitted at trial, the appellant said as follows to Dywayne S. in the course of the shooting: "Let's just, you know, it's the only way we'll be safe."

Soon after, the appellant, Dywayne S., and the other children drove to the City of Romney, West Virginia, whereupon the appellant called the State Police and stated that Conard had threatened her. The appellant did not mention the shooting incident at that time. The appellant and the children then drove to her mother's residence for the remainder of the night.

On the morning of June 21, 1994, several State Police officers proceeded to the mobile home to serve a family violence protective order upon Conard. Finding the door of the home ajar, the officers discovered Conard's body upon the couch. His hands were folded, and no signs of a struggle were observed within the home. From the nature of the wound upon the body, the State Police officers concluded that the shooting death was not a suicide. During the ensuing investigation, both the appellant and Dywayne S. gave statements to the State Police confessing to the shooting.

During her subsequent incarceration concerning the homicide, the appellant wrote a series of letters to Dywayne S., who was also incarcerated. In those letters, later obtained by the State and admitted at trial, the appellant asked Dywayne S. to take responsibility for the shooting of Conard in order that the appellant could be released from jail and could secure custody of Sabrina, Amber and Thomas. Various statements contained in the letters were as follows:

> I know how I can get out but it means that you will have to say that you done this by yourself when I went out to take the kids their sleeping bags. I know it is a lot to ask you to do, but if I could [get] out I can get the kids back.
>
> . . . .
>
> All I need you to do is say that when I took the kids sleeping bags out to them I was out there for a while with the kids so you took the gun and shot him. We made up the other story because we were scared and didn't know what else to say.
>
> . . . .
>
> I think that the most you will get is two years, and you might even get off with nothing because that investigator has dug

up a lot of stuff against [Conard] being abusive to us.

## II

On September 6, 1994, an indictment was returned by a Hampshire County grand jury charging the appellant with murder of the first degree of Thomas G. Conard, and conspiracy to commit murder.[3] Dywayne S. was separately charged with offenses concerning Conard's death. Those charges, however, are not relevant to this appeal.

Following the indictment, various motions were filed by the appellant and the State concerning the admissibility of evidence at trial. The appellant moved to suppress her statement given to the State Police confessing to her role in the shooting of Conard. The circuit court conducted a hearing upon that motion and ruled it admissible. The appellant does not challenge that ruling in this appeal.

The State filed motions in limine to exclude any evidence of Conard's alleged acts of misconduct or violence toward the appellant or her children and to exclude any reference by the appellant to the theory of "battered woman syndrome." Those motions in limine were granted by the circuit court. Also excluded by the circuit court were any references to alleged sexual abuse by Conard of Melinda, the appellant's daughter, who was seventeen years old at the time of the homicide.[4]

The appellant's trial was conducted in February, 1995. Following the submission of the testimony and exhibits therein, the circuit court concluded that the evidence failed to warrant the giving of instructions concerning self-defense or voluntary manslaughter to the jury. Consequently, the appellant's proffered instructions upon those theories were refused. With regard to voluntary manslaughter, the circuit court specifically stated:

> [I]t is undisputed that the deceased was asleep on the couch when this occurred. It's undisputed that the defendant and her son left the house, came back in and loaded the gun, attempted to shoot the deceased, again, while he was still sleeping on the couch. The gun misfired, did not fire, and the defendant and her son went to the kitchen area, or at least to another area of the mobile home, reloaded the gun with another shell, took the misfired shell out, reloaded the gun, went back to the couch where the deceased was still sleeping, and shot the fatal round at that time.
>
> The Court believes that, under those circumstances, which are undisputed in this case, that voluntary manslaughter would not be properly instructed to [the jury].

At the conclusion of the trial, the jury, as indicated above, found the appellant guilty of murder of the second degree and conspiracy. Thereafter, in March 1995, an evidentiary hearing was conducted by the circuit court concerning sentencing. As the final order of April 5, 1995, reflects, the circuit court denied the appellant's post-trial motions and imposed the consecutive sentences described above. This appeal followed.

## III

As the petition for appeal indicates, the assignments of error by the appellant are

---

**3.** As *W. Va.Code*, 61–2–1 [1991], concerning murder, provides:

Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.

Moreover, as stated in *W.Va.Code*, 61–10–31 [1971]:

It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State or (2) to defraud the State, the state or any county board of education, or any county or municipality of the State, if, in either case, one or more of such persons does any act to effect the object of the conspiracy.

**4.** It should be noted that, in 1993, Melinda filed a complaint with the West Virginia State Police in which she alleged that she had been sexually abused by Conard. She later withdrew the accusation, however, and the complaint was closed as "unfounded."

related. According to the appellant, the circuit court committed error in refusing to give instructions to the jury concerning self-defense and voluntary manslaughter. In that regard, the appellant contends that the circuit court committed error in refusing to admit evidence concerning Conard's prior acts of misconduct or violence toward the appellant or her children. In particular, the appellant asserts that the circuit court committed error in refusing to allow the appellant's expert witness, Dr. Stephen M. Townsend, a psychologist, to testify that, although the appellant did not meet the criteria of the battered woman syndrome, she feared the decedent.

The State, on the other hand, emphasizes the uncontroverted circumstances surrounding the shooting death of Thomas G. Conard. The State contends that, because of those circumstances, neither of the instructions sought by the appellant were justified and that, furthermore, the circuit court ruled correctly in excluding Conard's alleged acts of misconduct or violence toward the appellant or her children. Specifically, the State asserts that the circuit court ruled correctly with regard to Dr. Townsend, especially since evidence concerning the appellant's alleged fear of Conard reached the jury through the admission of the appellant's statement to the State Police confessing to her role in the shooting.

■ In syllabus point 1 of *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971), this Court held:

When in a prosecution for murder the defendant relies upon self-defense to excuse the homicide and the evidence does not show or tend to show that the defendant was acting in self-defense when he shot and killed the deceased, the defendant will not be permitted to prove that the deceased was of dangerous, violent and quarrelsome character or reputation.

■ That holding, in *Collins*, is consistent with this Court's earlier expression in syllabus point 1 of *State v. Hardin*, 91 W.Va. 149, 112 S.E. 401 (1922):

In a prosecution for murder, where self defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing making a murderous attack upon the defendant, it is competent for the defendant to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof.

*See also* syl. pt. 1, *State v. Walker*, 92 W.Va. 499, 115 S.E. 443 (1922).

In *Commonwealth v. Grove*, 363 Pa.Super. 328, 526 A.2d 369, *appeal denied*, 517 Pa. 630, 539 A.2d 810 (1987), a case similar to the case now before us, the defendant, with the assistance of her daughter, shot and killed her husband while her husband was asleep. At trial, the defendant advanced the theory of self-defense. Nevertheless, the defendant, in *Grove*, was convicted of murder and conspiracy. Upon appeal, the defendant asserted that the trial court erroneously excluded evidence of the husband's prior violent acts. The Superior Court of Pennsylvania rejected that assertion and, in affirming the defendant's convictions, stated:

We find that self-defense was not properly at issue because there was no evidence presented to establish that appellant reasonably believed that she or any other person was in imminent danger of death or serious bodily injury on the present occasion when the deadly force was used. In reaching this conclusion we are mindful of the unique questions and considerations which arise in cases involving intra-familial, and especially intra-spousal, violence or abuse. In the context of a claim of self-defense by a battered spouse, our Supreme Court has explained: 'A woman whose husband has repeatedly subjected her to physical abuse does not, by choosing to maintain her family relationship with that husband and their children, consent to or assume the risk of further abuse.'

. . . .

Unlike the battered wives literally under seige in [*Commonwealth v.*] *Watson* [494

Pa. 467, 431 A.2d 949 (1981)] and [*Commonwealth v.] Zenyuh* [307 Pa.Super. 253, 453 A.2d 338 (1982)] [however], the appellant in the instant case offered no evidence whatsoever to establish that she or any other person was in imminent danger of death or serious bodily injury on the present occasion when the deadly force was used.

363 Pa.Super. at 333–35, 335–37, 526 A.2d at 372, 373.

 Here, as the circuit court recognized, the facts surrounding the death of Conard are not in dispute. While Conard was sleeping, the appellant placed the three children in the car and then held the rifle while Dywayne S. pulled the trigger. When the rifle misfired, it was reloaded, and, with the appellant, again, holding the weapon, Dywayne S. pulled the trigger killing Conard. The appellant does not contest those facts, and, as the State Police investigation disclosed, no evidence of a struggle was found within the mobile home. Moreover, according to Dr. Townsend, the appellant's expert witness, the appellant failed to meet the criteria of the battered woman syndrome.[5] Although the testimony of Dr. Townsend was excluded, including his testimony that the appellant feared Conard, the statement of the appellant given to the State Police and admitted at trial contains ample evidence of the appellant's fear.[6]

 Accordingly, this Court is of the opinion that the circuit court did not commit error in refusing to instruct the jury upon self-defense. As we stated in *State v. Derr*, 192 W.Va. 165, 180, 451 S.E.2d 731, 746 (1994): "Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard." Moreover, upon the circumstances and authorities discussed above, this Court concludes that the circuit court did not commit error in refusing to admit evidence concerning Conard's alleged acts of misconduct or violence toward the appellant or her children.

 Similarly, this Court is of the opinion that the circuit court did not abuse its discretion in refusing to instruct the jury upon voluntary manslaughter. In *State v. Beegle*, 188 W.Va. 681, 425 S.E.2d 823 (1992), this Court held that a defendant was not entitled to a voluntary manslaughter instruction where the defendant claimed that he shot the victim out of fear, rather than out of anger. As the *Beegle* opinion states:

As previously indicated, this Court has also rather consistently indicated that a voluntary manslaughter is by definition a homicide which is committed in the heat of passion. While a fair reading of the evidence in the present case might suggest that the defendant shot John Fletcher out of fear, the defendant's own testimony shows that he was not acting in anger or the heat of passion ... [.] Given the testimony, this Court cannot conclude that the giving of a voluntary manslaughter instruction was supported by the evidence or that the trial court erred in failing to give such an instruction.

The appellant does not contend before this Court that she met the battered woman syndrome. Rather, the petition for appeal asserts that although "the Defendant did not meet the test [sic] book profile of a Battered Wife Syndrome Case," Dr. Townsend could have offered evidence concerning the appellant's state of mind, particularly regarding her fear of Conard.

5. In syllabus point 5 of *State v. Steele*, 178 W.Va. 330, 359 S.E.2d 558 (1987), this Court held: "Expert testimony can be utilized to explain the psychological basis for the battered woman's syndrome and to offer an opinion that the defendant meets the requisite profile of the syndrome." *See* 1 F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 4–4(F)(1)(b) (3rd ed.1994), concerning an accused's "self-defense state of mind."

Nevertheless, as Dr. Townsend testified *in camera:*

The Court: And in your professional opinion, she did not meet that profile as being a battered partner or battered spouse, or battered woman?

A. That's correct, she did not meet the full criteria.

6. For example, the statement of the appellant given to the State Police indicated:

Q.... [Y]ou just were so afraid, you just did it and then left? You're shaking your head, yes—

A. Oh, yeah, I just, I was just so scared, I told Dywayne, I said, "let's just, you know, it's the only way we'll be safe."

188 W.Va. at 686, 425 S.E.2d at 828. *See W Va. R.Crim. P.* 31(c).

 Here, as stated, Conard was asleep when the shooting occurred. Furthermore, although evidence was submitted at trial to the effect that he struck the appellant earlier that day, the record does not indicate that any physical altercation took place between the appellant and Conard that evening when the appellant returned from her mother's residence. The evidence, therefore, did not warrant the giving of an instruction concerning voluntary manslaughter. As syllabus point 4 of *Collins, supra,* makes clear: "Instructions must be based upon the evidence and an instruction which is not supported by evidence should not be given."

 Finally, the appellant contends that the circuit court committed error in allowing the jury to consider the above-described letters sent by the appellant to her son, Dywayne S. In the letters, the appellant asked Dywayne S. to take responsibility for the shooting of Conard in order that the appellant could be released from jail and could secure custody of her other children. The appellant objected to the admission of the letters.

Rulings upon the admissibility of evidence are generally, of course, within the discretion of a circuit court. Syl. pt. 2, *State v. Bell,* 189 W.Va. 448, 432 S.E.2d 532 (1993). Here, as the record indicates, the circuit court conducted a pre-trial hearing concerning the letters and found them to be admissible. Although the record is unclear as to the reasons given for that ruling, this Court is of the opinion that the admission of the letters, under the circumstances of this case, was within the circuit court's discretion. In particular, as the State contends, the letters were relevant to establish the appellant's consciousness of guilt. *See United States v. Shorter,* 54 F.3d 1248, 1260 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995), indicating that a letter sent by a defendant to a co-conspirator, suggesting that the co-conspirator not implicate the defendant, was admissible as "consciousness of guilt." *See also State v. Smith,* 770 S.W.2d 469 (Mo.Ct.App.1989), and Rule 401 of the *West Virginia Rules of Evidence.* Accordingly, the appellant's assertion of error with regard to the letters is without merit.

For the reasons stated above, the final order of the Circuit Court of Hampshire County, entered on April 5, 1995, is affirmed.

Affirmed.

RECHT, Judge, sitting by temporary assignment.