**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3559-20

STATE IN THE INTEREST
OF E.S., a juvenile.
_________________________

**APPROVED FOR PUBLICATION**

**December 13, 2021**

**APPELLATE DIVISION**

Argued October 25, 2021 – Decided December 13, 2021

Before Judges Sabatino, Mayer and Natali.

On appeal from an interlocutory order the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0380-21.

Michael Denny, Assistant Deputy Public Defender argued the cause for appellant E.S. (Joseph E. Krakora, Public Defender, attorney; Michael Denny, of counsel and on the brief).

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent State of New Jersey (William A. Daniel, Prosecutor of Union County, attorney; Milton S. Leibowitz, of counsel and on the briefs).

Elana B. Wilf argued the cause for amicus curiae Rutgers Criminal and Youth Justice Clinic and the National Juvenile Defender Center (Rutgers Criminal and Youth Justice Clinic and National Juvenile Defender Center, attorneys; Elana B. Wilf, of counsel and on the brief; Laura Cohen and Kristina Kersey, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This interlocutory appeal presents an unsettled question concerning the fair and appropriate sequence of proceedings in the prosecution of a juvenile offender who the State wishes to waive to adult court pursuant to N.J.S.A. 2A:4A-26.1. The question arises in a context where the juvenile moves to suppress evidence that the State will rely upon at the waiver hearing and also possibly seek to admit at an eventual trial.

Should the suppression hearing be conducted first by a judge in the Family Part before the waiver hearing? Or should the waiver hearing take precedence, and, if the juvenile is waived, the suppression hearing then be conducted by a judge in the Criminal Part? The juvenile, joined by amici, argues the suppression hearing should take place first, while the State argues the waiver hearing should occur first.

Responding to the trial court's observation of the need for guidance in the absence of a Court Rule or precedent on point, we hold the Family Part has the discretion to determine the optimal sequence of proceedings, depending upon the circumstances presented in a particular case. In exercising that discretion, the trial court should apply a general preference to have the suppression hearing conducted first in the Family Part. As we explain in this opinion, however, that

preference may be outweighed by other considerations, such as whether an adult alleged co-perpetrator or an already-waived juvenile co-perpetrator has filed a cognate suppression motion in the Criminal Part. Thus, unless a future Court Rule prescribes a different approach, the sequencing decision is best handled in the trial court in a case-by-case discretionary manner with that preference in mind.

Additionally, we adopt the State's concession that if the juvenile offender is waived first but a Criminal Part judge thereafter grants the suppression motion, the offender can move to have the case remanded back to the Family Part if the remaining non-suppressed evidence can no longer support the continued prosecution of the juvenile as an adult.

Because the Family Part judge in this case did not misapply his discretion in choosing to proceed with the waiver hearing first, we affirm that determination and remand for that proceeding.

## I.

The limited record of this yet-to-be-litigated case has little bearing upon the general issues of law and procedure before us. We summarize the factual and procedural background succinctly.

According to the State's contentions,[1] on March 31, 2021, E.S., a juvenile who was then seventeen years old, was walking down a street in Elizabeth. E.S. was accompanied by an adult, Aleem Johnson. Four plainclothes Elizabeth police officers started following E.S. and Johnson in an unmarked Jeep. A detective in the Jeep observed E.S. reaching into to his right pant pocket while shielding the outside of his pocket with his left hand. At about the same time, the detective saw Johnson reach towards his waistband. While looking at the Jeep, E.S. and Johnson crossed the street diagonally.

Shortly thereafter, the detective got out of the Jeep, announced himself as a police officer, and directed E.S. and Johnson to stop. According to the detective, E.S. and Johnson defied the command, and each of them brandished handguns and briefly pointed them toward the Jeep. They ran down the street and were pursued by the officers. E.S. was apprehended a short distance away while trying to hop over a fence. The police confiscated from him a loaded semiautomatic handgun with a spent casing swelled inside the chamber.

On the same day, the State filed a juvenile delinquency complaint against E.S., charging him with: (i) second-degree possession of a firearm with an

---

[1] The defense does not contest the State's version of the facts for purposes of this appeal on the procedural sequencing issue.

unlawful purpose, N.J.S.A. 2C:39-4(a)(1); (ii) third-degree aggravated assault by pointing or displaying a firearm at a law enforcement officer, N.J.S.A. 2C:12-1(b)(9); (iii) second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); (iv) the disorderly persons offense of obstructing the administration of law or other governmental function, N.J.S.A. 2C:29-1(a); and (v) fourth-degree resisting arrest, N.J.S.A . 2C:29-2(a)(2).

Although our record does not supply the details, the parties agree that Johnson, the alleged adult co-perpetrator, was charged in the Criminal Part with offenses arising out of the same episode. Counsel represented to us at oral argument that Johnson has filed his own motion to suppress evidence derived from the same warrantless police action; his motion remains unheard in the Criminal Part, apparently as the court awaits the outcome of the present appeal.

On April 13, 2021, E.S.'s defense counsel filed a motion to suppress the State's physical evidence, arguing it was the fruit of an unconstitutional warrantless search and seizure. Less than two weeks later, on April 26, the State filed a motion to waive E.S. to the adult Criminal Part pursuant to N.J.S.A. 2A:4A-26.1.

Initially, the Family Part judge scheduled a hearing on the suppression motion to be conducted before the waiver hearing. The State moved to have the

court reconsider that sequence. The court thereafter heard arguments from counsel to decide which of the two motions should be conducted first.

As we have already noted, the State advocated for the waiver motion to occur first, particularly emphasizing the jurisdictional nature of that threshold determination. In opposition, the defense stressed the momentous consequences to a minor of waiver to adult court. The defense further urged that the court's waiver ruling, and any finding of probable cause, should not be based on evidence that was unconstitutionally seized by the police, and accordingly the court should first rule on the suppression motion.

After considering these and other arguments, the Family Part judge decided to proceed with the State's waiver motion before the juvenile's suppression motion. In his oral opinion on June 23, 2021, the judge noted there was no statutory or other binding authority that prescribed the proper sequence.

In his analysis, the judge rejected several arguments made by each side. First, the judge disagreed with the prosecutor's argument that conducting the motion to suppress prior to the waiver hearing would prejudice the State or require an unreasonable use of its resources. The judge also disagreed with the defense that E.S. would be prejudiced if his motion to suppress were "subverted or delayed" by the trial court prioritizing the waiver hearing. In this regard, the

judge noted that if the State's waiver application were granted, E.S. would maintain the right to file an identical motion to suppress as an adult defendant, which constitutes sufficient due process.

The judge further considered the significance of the requirement of probable cause that the juvenile committed an enumerated offense under N.J.S.A. 2A:4A-26.1. The judge reasoned that this probable cause hearing serves the same effective function and is guided by the same evidentiary principles as grand jury hearings. Citing to State v. J.L.W., 236 N.J. Super. 336 (App. Div. 1989), the judge noted that "[p]robable cause may not be based solely on admissible evidence pursuant to the New Jersey Rules of Evidence[.]" The judge also cited State v. A.T., 245 N.J. Super. 224, 227-28 (App. Div. 1991) (noting that a probable cause hearing, considering waiver applications, is not an occasion "for the trial judge to weigh the evidence and determine where the truth of the matter l[ies]") and State v. J.M., 182 N.J. 402, 417 (2005) (noting the State's sole reliance upon the testimony of a police officer can be sufficient to show probable cause that a juvenile committed robbery and an aggravated assault, as credibility determinations are seldom crucial in deciding whether the evidence supports probable cause). The judge reasoned that "the evaluation of probable cause is not an evaluation of guilt or innocence," or indicative of

whether the evidence "will be sufficient to prove beyond a reasonable doubt" that a waived juvenile committed the offense(s) charged.

The judge concluded that, in the absence of case law or a codified provision on point, the trial court has the discretion to determine which hearing should occur first, "taking into consideration any prejudicial effect that it would have on the juvenile or the State, taking into effect factors of judicial economy and taking into effect the re-duplication of anything else."

The juvenile moved for leave to appeal, which we granted. We also permitted the Rutgers Criminal Youth Justice Clinic and the National Juvenile Defender Center to appear as amicus curiae. They support E.S.'s position that the suppression hearing should be heard first in the Family Part before the waiver hearing.

## II.

Our discussion begins with a recognition of the profound importance of a decision to waive a minor accused of an offense to the adult criminal court. Time after time, our courts have underscored the momentous impact of such decisions, and the fundamental difference between juvenile courts that focus on rehabilitation of youths and adult criminal courts that are more focused on deterrence and punishment. See, e.g., In re Gault, 387 U.S. 1, 14-29 (1967);

State v. N.H., 266 N.J. 242, 252-53 (2016); State v. R.G.D., 108 N.J. 1, 4-5 (1987). For one thing, as here, a juvenile offender generally faces the possibility of much more severe sanctions if convicted and sentenced as an adult than if adjudicated a delinquent in the Family Part for that same wrongful behavior. State v. Z.S., 464 N.J. Super. 507, 513 (App. Div. 2020).

In recognition of these fundamental forum-related differences, our case law has striven to assure that juveniles receive adequate procedural protections before a court decides whether or not to grant a prosecutor's waiver motion. For example, in N.H., the Supreme Court stressed that "due process requires that juveniles receive a hearing, effective assistance of counsel who have access to relevant information, and a statement of reasons for the court's decision." N.H., 226 N.J. at 253. Prosecutors are obliged to make discovery available to a juvenile before a waiver hearing is held to better ensure effective assistance of counsel in preparing for "all facets of the [waiver] hearing and [to] decide how best to cross-examine the State's witnesses, whether the juvenile or others should testify, and how to assess or challenge the prosecutor's exercise of discretion." Id. at 254-56. In that same vein, the Court held in J.M., 182 N.J. at 415, that juveniles must be permitted to testify and present evidence at the probable cause portion of the waiver hearing, recognizing that the "heightened importance to

the juvenile justifies treating juveniles differently from adults at a probable cause hearing."

Probable cause is a critical required element of the multi-factor statutory test for waiving a juvenile offender to adult court under N.J.S.A. 2A:4A-26.1. Probable cause signifies there "is 'a well-grounded suspicion or belief that the juvenile committed the alleged crime[,]'" which can further be combined with "reasonable inferences" drawn from those suspicions or beliefs to satisfy the probable cause standard under the statute. State v. A.D., 212 N.J 200, 205-06 (2012) (quoting J.M., 182 N.J. at 417).

If a juvenile is over the age of fifteen and there is probable cause that he or she committed one of various enumerated offenses—such as the possession of a firearm with a purpose to use it unlawfully against the person of another, N.J.S.A. 2A:4A-26.1(c)(2)(j)—waiver is presumptively appropriate unless other factors set forth in N.J.S.A. 2A:4A-26.1(c)(3)(a) through (k) weigh against it. A prosecutor's office seeking waiver must expressly consider these factors, and it must set forth its analysis of them in a written statement that does not "simply mirror the statutory language in a cursory fashion." N.H., 226 N.J. at 250; Z.S., 464 N.J. Super. at 533. The Family Part is authorized to deny the State's waiver

motion if the court concludes the State abused its discretion in evaluating the statutory factors. State v. J.V., 242 N.J. 432, 440-41 (2020).

A waiver hearing's core purpose is to make a threshold jurisdictional determination, rather than to adjudicate substantive issues. See R.G.D., 108 N.J. at 18 ("[I]n a waiver hearing, guilt or innocence is not at issue. Rather, the focus is on determining the appropriate court to hear the case."). Waiver hearings are not designed to be full-fledged trials. A.D., 212 N.J. at 220-21 (emphasizing that the waiver hearing inquiry does not involve "the fine resolution of conflicting evidence" applicable under either the reasonable doubt or preponderance of the evidence standards).

Notably, the Rules of Evidence do not strictly limit the proofs that can be admitted by the parties and relied upon by the court at a waiver hearing. J.M., 182 N.J. at 417. Hearsay evidence, for example, may be used by the State to establish probable cause that the juvenile committed the charged offenses. State v. B.G., 247 N.J. Super. 403, 409 (App. Div. 1991). Constitutional due process in the juvenile waiver context includes an "opportunity to be heard and present evidence," but stops short of "constitutional guarantees arising from the question of admissibility of evidence at a trial on the merits[.]" State v. B.T., 145 N.J. Super. 268, 273 (App. Div. 1976) (emphasis added).

Having made these observations about waiver hearings, we proceed to make several about suppression motions. Like Criminal Part judges who entertain motions by adult defendants to suppress evidence, see R. 3:5-7, Family Part judges similarly can hear defense motions to suppress evidence in juvenile cases and have, in fact, granted such motions where justified. See, e.g., State in Interest of A.P., 315 N.J. Super. 166, 167 (Ch. Div. 1998). Superior Court judges who sit in the Family Part and their colleagues who sit in the Criminal Part both have the expertise to adjudicate such motions, and to apply the pertinent constitutional or legal standards that may at times require suppression.

The subject matter of suppression motions runs the gamut from search and seizures, police interrogations, eyewitness identifications, and other topics. Both the Family Part and the Criminal Part are well equipped to adjudicate these applications, and to conduct evidentiary hearings at which law enforcement personnel and other witnesses commonly testify. We discern no Part of the Superior Court that is inherently better suited to hear suppression motions. If either the State or the defense believes the trial court has erred in its suppression ruling, the aggrieved party may pursue a motion for leave to appeal with this court before final judgment. R. 2:5-6. We apply no different standards on

appeal to suppression decisions made by Family Part judges as opposed to Criminal Part judges.

A further general principle that bears mention is the traditional high amount of deference we accord to trial courts in the scheduling of proceedings. Trial judges have substantial discretion in "control[ling] [their] own calendar[.]" State v. Miller, 216 N.J. 40, 65 (2013). That said, appellate courts at times will conclude the trial court misapplied its discretion in a scheduling decision. See, e.g., State v. Kates, 216 N.J. 393, 397 (2014) (in which the Court ruled that a trial court's summary and baseless denial of an adjournment—in that case to retain private counsel rather than change counsel mid-trial—constituted a "structural error"); Z.S., 464 N.J. Super. at 547 (in which we reversed the trial court's denial of a Public Defender's unopposed request for a short adjournment of a juvenile waiver hearing because she had been discharged from the hospital only two days earlier and needed more time to prepare and deal with additional written submissions by the State).

## III.

Having identified these general principles, we now endeavor to resolve the sequencing question that is posed to us. Which should come first: the waiver

hearing or the suppression hearing? As with many issues that arise in the law, we respectfully submit that it depends on the situation.

We reject the argument made by E.S. and the amici that the Constitution inexorably requires that the suppression hearing be conducted first. As we have already noted, case law has clearly held that due process principles do not preclude courts at waiver hearings from considering evidence that may be deemed inadmissible at trial. A probable cause finding may be supported by hearsay or other inadmissible proof. However, a Family Part judge, in his or her role as fact-finder at the waiver hearing, may choose to give less weight to evidence that seems likely to be excluded at an eventual suppression hearing. We entrust to the Family Part considerable deference and judgment in performing that evidence-sifting role.

On the other hand, in the absence of a Court Rule that would dictate it, we likewise decline to adopt here a bright-line rule that would compel the waiver hearing to be heard, without exception, before any suppression hearing. We recognize the waiver hearing is jurisdictional in nature, and that the statutory scheme, N.J.S.A. 2A:4A-26.1, calls for the State to move promptly for waiver if it so chooses, and for the waiver hearing to be completed expeditiously. But we also appreciate, as the Public Defender and the amici have argued, that even

a temporary reclassification from juvenile offender to adult criminal court defendant can be impactful. For instance, the juvenile may lose access to the same range of services available pretrial to other juveniles. The juvenile may also feel more obliged to capitulate to a plea offer, or to provide evidence against others, because of the prosecutor's comparatively greater leverage in the criminal arena. Although E.S. himself reportedly has continued to be held in a juvenile detention facility, a waived juvenile's custody status may become more restrictive, and he or she may become less able to be visited by relatives and friends while awaiting trial. The juvenile's adult prosecution and appearance in the Criminal Part might also be the subject of publicity, absent an entered sealing order.

The State has represented to both the trial court and this court that if a juvenile is waived and a Criminal Part judge thereafter grants a defense motion to suppress all or some of the State's evidence, the juvenile has an avenue to have his or her case returned to the Family Part. We accept and adopt that concession, although the specific avenue is a bit unclear.

The current waiver statute does specify that if a juvenile waived to the adult court is ultimately acquitted of the waivable offense(s) or only found guilty of offenses not enumerated in the waiver statute, the case must be remanded

back to the Family Part for a disposition. N.J.S.A. 2A:4A-26.1(f)(2). In addition, the statute contains a "transfer back" provision, N.J.S.A. 2A:4A-26.1(f)(3), which allows a waived case to be remanded to the Family Part "at any point in the proceedings subsequent to the decision ordering waiver . . . [w]ith the consent of the defense and the prosecutor."

We presume that a prosecutor, in the interests of justice, will provide such consent if the suppression ruling deems inadmissible the entirety of the State's proofs of the juvenile's culpability. But what if the suppression ruling leaves open the possibility that the State nonetheless might be able to win its case with any non-suppressed evidence? Without resolving that hypothetical question here, we anticipate that the juvenile's counsel might be able to move before the Criminal Part and argue that the State is abusing its discretion by arbitrarily refusing to consent to a remand under N.J.S.A. 2A:4A-26.1(f)(3).[2] In any event, for the purposes of this opinion, we will take the State at its word and presume there will be a "transfer back" process available to waived juveniles in at least

[2] By analogy, we refer to motions by defendants under N.J.S.A. 2C:43-6.2 seeking relief from a prosecutor's "patent and gross abuse of discretion" in refusing to agree to a sentencing downgrade for a firearms offense charged under the Graves Act, N.J.S.A. 2C:43-6. See State v. Benjamin, 228 N.J. 358, 364 (2017) (exemplifying such judicial review).

some instances in which the Criminal Part grants a motion to suppress critical evidence.

Rather than endorsing a per se approach, we agree with the trial judge in this case that that sequencing of the waiver hearing and the suppression hearing should be treated as a discretionary, highly contextual decision. Without exhausting all of the possibilities here, there are some situations in which it makes practical sense to conduct the suppression hearing first, and others in which the waiver hearing should have primacy.

For example, in some instances, as here, there are one or more alleged co-perpetrators who are either adults or juveniles who have already been waived to the Criminal Part, and who have suppression motions involving the same subject matters pending in that court. The pendency of such parallel motions in the Criminal Part is a factor, albeit not necessarily a dispositive one, in going forward with the waiver motion and finding whether the juvenile in question will also end up within the Criminal Part's jurisdiction. If waiver is granted, then the suppression hearing ideally can be conducted by one judge in one common proceeding, thereby avoiding duplicative suppression rulings and possible inconsistent outcomes.

Another practical factor to be weighed may be the anticipated time frames to prepare for and complete the respective waiver and suppression hearings. In some waiver contexts, the hearing may be substantially delayed because of the logistics of obtaining expert reports about the juvenile's behavioral health and suitability for waiver under the statutory factors, arranging fact witnesses, and other preparatory tasks. By comparison, it may be easier for a suppression hearing involving, say, a single police witness to be completed in the meantime.

Conversely, there may be instances in which a suppression hearing (grounded on, for instance, a warrantless search, custodial interrogation, or eyewitness identification) involving multiple witnesses, video and audio recordings, and exhibits, cannot be done promptly, and where the waiver hearing can be finished much sooner. Other practical difficulties may arise if a key witness for either hearing is ill or otherwise temporarily unavailable. The trial court should have flexibility in dealing with such situations.

In the absence of a Court Rule, we conclude the trial court is in the best position to weigh these practical considerations and determine in its discretion which hearing to conduct first. For making that discretionary decision, we advise trial judges to apply a general preference toward conducting the suppression hearing first, in light of the policy concerns associated with the

powerful impact of waivers upon minors. If the State loses the suppression motion with respect to critical evidence of a waivable offense, it may wish to reconsider going forward with the waiver motion. On the other hand, if the defense loses the suppression motion, that may affect its own litigation posture significantly. That said, we believe it prudent to allow Family Part judges the ability to chart the preferable course of action in a given case.

Applying these deferential principles here, we affirm the Family Part judge's decision to hold the waiver hearing in this case first. The judge did not misapply his discretion in adopting that approach after reflecting upon the matter more deeply on reconsideration. The general preference we have set forth to prioritize the suppression motion is outweighed in this case by the adult alleged co-perpetrator's companion motion to suppress the fruits of the same warrantless police search and seizure. Moreover, no special logistical circumstances have been identified to us that make the judge's chosen sequence manifestly impractical or unfair.

We therefore affirm the trial judge's ruling and remand for further proceedings in accordance with this opinion. We do so, of course, without foreclosing a different approach being developed in the future by a Court

Committee of stakeholders and the adoption of a Court Rule prescribing the procedures and standards.

Affirmed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION